Douglas Q. KITT and Nancy C. Kitt, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5002.

United States Court of Appeals, Federal Circuit.

Jan. 10, 2002.

Roger J. Marzulla, Defenders of Property Rights, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Nancie G. Marzulla.

Steven W. Parks, Attorney, Tax Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was Kenneth L. Greene, Attorney.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

For many years the Internal Revenue Code has provided that if the owner of an Individual Retirement Account ("IRA") withdraws all or part of it for an impermissible (non-retirement related) purpose or before reaching a certain age, there will be a ten percent tax on the withdrawal. In the summer of 1997 Congress created a second kind of IRA (effective January 1, 1998)—the so-called Roth IRA—and provided that ordinary IRAs could be "rolled over" into Roth IRAs. The form that the legislation took, however, meant that if funds from a regular IRA were rolled over into a Roth IRA and then immediately

withdrawn, the ten percent tax would not apply. After Congress discovered this situation, in July 1998 it subjected such withdrawals to the ten percent tax, effective January 1, 1998 (the effective date of the basic legislation).

In the interval the appellant Mr. Kitt rolled over his regular IRA into a Roth IRA, and then withdrew most of the money in the latter for a non-permissible purpose and before reaching the specified age. Mr. and Mrs. Kitt challenged the application of the ten percent tax to the withdrawal as unconstitutional because it is: (1) a retroactive imposition of a penalty that denies them due process, in violation of the Fifth Amendment, (2) a taking of their property, for which they are entitled to just compensation under that amendment, and (3) the imposition of an excessive fine, in violation of the Eighth Amendment. The United States Court of Federal Claims rejected these contentions. We affirm.

I

A. In the early 1970s, Congress' concern with the low national savings rate led it to create certain savings incentives, particularly for individuals in anticipation of retirement. The Employee Retirement Income Security Act ("ERISA"), Pub.L. No. 93–406, 88 Stat. 829 (1974), allowed individuals ineligible for participation in employee pension plans to create their own Individual Retirement Accounts ("IRAs") so that they obtained similar benefits to those eligible for employee pensions. H.R.Rep. No. 93–779, at 8 (1974); see also 120 Cong. Rec. 8702 (1974) (statement of Rep. Ullman), reprinted in 1974 U.S.C.C.A.N. 5166, 5166 (noting Congress' continued efforts at "encouraging the growth and development of voluntary private pension plans").

Under ERISA, individuals could make tax deductible contributions to their IRAs.

The payment of tax on those funds would be deferred until the funds were withdrawn, at which time the distributions would be included in gross income, and be taxable.

Congress also determined, however, that such tax incentives were inappropriate if the savings were diverted to non-retirement uses. S.Rep. No. 99–313, at 613 (1986); see also S.Rep. No. 93–383 (1974), reprinted in 1974 U.S.C.C.A.N. 4889, 5015–17 ("The bill also contains a number of other provisions designed to ensure that the accounts will be used for retirement savings.... Premature distributions frustrate the intention of saving for retirement, and the committee bill, to prevent this from happening, imposes a penalty tax."). As such, "in order to discourage withdrawals and to recapture a measure of the tax benefits that have been provided," an additional tax of ten percent was imposed on such early withdrawals. H.R.Rep. No. 99–426, at 728–29 (1985). The statute provides:

If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

26 U.S.C. § 72(t)(1) (1994).

The national savings rate remained a subject of concern, however, and in 1997 Congress provided for a different kind of IRA, the so-called Roth IRA. Taxpayer Relief Act of 1997, Pub.L. No. 105–34, 111 Stat. 788 (1997); see also H.R. Rep. 106–753; H.R. Rep. 105–148, at 337 (1997), reprinted in 1997 U.S.C.C.A.N. 678, 731. Unlike traditional IRAs, contributions to Roth IRAs were not tax deductible. Once the fund was established, however, the money accumulated tax free, and "qualified

distributions," i.e., those made after the age of fifty-nine and one-half or for a qualified purpose, were not taxable. 26 U.S.C. § 408A(d)(1) (Supp. III 1997). If, however, funds from Roth IRAs were withdrawn either early or for a non-retirement purpose, they, too, were subject to the ten percent additional tax. In order to encourage taxpayers to take advantage of the new Roth IRAs, Congress provided special favorable tax treatment for individuals who converted (or "rolled over") funds from their traditional IRAs into newly-formed Roth IRAs. *Id.* § 408A(d)(3)(C). The tax on the rolled-over amount also would be spread over four years. *Id.* § 408A (d)(3)(A)(iii), *amended by* 26 U.S.C. § 408A (d)(3)(A) (Supp. V 1999).

The way in which these complex statutory provisions were worded meant that a key element in determining whether the ten percent additional tax would apply would be whether the amount withdrawn was "includable in gross income." The provisions produced the following anomalous result: IRA withdrawals made prematurely or made for an impermissible purpose were subject to the ten percent additional tax if made from traditional or Roth IRAs, but not if made from a Roth IRA created by rolling over a traditional IRA.

Shortly after enacting the Taxpayer Relief Act of 1997, Congress became aware of this situation, and sought to change it. In 1998, the Internal Revenue Service Restructuring and Reform Act, Pub.L. No. 105–206, 112 Stat. 685 (1998), provided that distributions from Roth IRAs made within five years of rollover that are allocable to the funds rolled over, are subject to the ten percent additional tax. It did this by providing that such distributions were to be included in gross income. 26 U.S.C. § 408A(d)(3)(F)(i) (Supp. V 1999); *see also* *id.* § 408A(d)(3)(A). The Act became effective on July 22, 1998, and applied retro-spectively to transactions since January 1, 1998, the effective date of the 1997 Act that provided for the Roth IRAs.

B. The appellant Mr. Kitt converted his traditional IRA, which contained $69,059, into a newly-created Roth IRA on March 6, 1998. On April 27, 1998, Kitt withdrew $53,000 from his Roth IRA, and used the money to pay the mortgage on his residence. This was a "non-qualified" withdrawal, both because it was for a non-retirement purpose and because Kitt was forty-four years old and had not reached the permissible withdrawal age of fifty-nine and one-half years. Therefore, his withdrawal was taxed.

In their 1998 joint income tax return, the Kitts treated the $69,059 rolled over into the Roth IRA as part of their gross income, on which they paid tax. They also paid the ten percent additional tax of $5,300 on the $53,000 Kitt had withdrawn from his Roth IRA. They then filed an amended return seeking a refund of that additional tax. When the Internal Revenue Service denied the refund, the Kitts filed the present suit in the Court of Federal Claims challenging the imposition of the additional tax. They contended that the application of the tax was a retroactive penalty that denied them due process and constituted a taking of their property, both under the Fifth Amendment, and an excessive fine in violation of the Eighth Amendment.

On cross-motions for summary judgment, the court granted the government's motion and dismissed the complaint. The court summarized its conclusions as follows:

> Retroactive imposition of the section 72(t) 10–percent additional tax on plaintiffs' early and non-qualified withdrawal from their Roth IRA does not offend due process. The retroactive aspects of the provision are rationally related to

the legitimate governmental purposes of curing Congress' mistake and recouping tax benefits conferred, and the retroactivity was confined to the seven month period necessary to enact the legislation and to prevent taxpayers from taking advantage of the period of enactment. Nor is it a taking. Imposition of liability in this case does not take plaintiffs' property, as that term is used in the Takings Clause. Even if the money paid were property, the failure of plaintiffs' due process argument, the moderate retroactivity of the statute, plaintiffs' ability to anticipate the tax imposition, and plaintiffs' expectations regarding taxation of traditional IRAs, all demonstrate that there has been no taking. Because imposition of the 72(t) tax is not "punishment", it is not an excessive fine that violates the Excessive Fines Clause.

## II

A. "[T]he validity of a retroactive tax provision under the Due Process Clause depends upon whether ... [such application] is itself justified by a rational legislative purpose." *United States v. Carlton,* 512 U.S. 26, 30–31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729–30, 104 S.Ct. 2709, 81 L.Ed.2d 601 (1984), in turn quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 16–17, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). The Supreme Court "repeatedly has upheld retroactive tax legislation against a due process challenge." *Carlton,* 512 U.S. at 30, 114 S.Ct. 2018. We conclude that the retroactive application of the ten percent additional tax to Kitt's transaction served a rational legislative purpose and therefore is consistent with the Due Process Clause.

The Supreme Court's decision in *Carlton* points the way to our decision here. There the Court rejected a due process challenge to the retroactive application of a

tax statute in circumstances similar to the present case.

*Carlton* involved an estate tax provision, codified at 26 U.S.C. § 2057, providing a deduction for half the proceeds of "any sale of employer securities by the executor of an estate" to "an employee stock ownership plan," in any estate tax return filed after the effective date of the statute, October 22, 1986. In December 1986, Carlton, the executor of an estate, purchased stock of MCI Communications Company for more than $11 million, and two days later sold it to the company's employee stock ownership plan at a $631,000 loss. In the estate tax return filed on December 29, 1986, Carlton claimed a deduction for half the proceeds of the sale of the stock, which reduced the estate tax by approximately $2.5 million.

On December 23, 1987, Congress amended the statute to provide that the deduction covered only the sale of securities " 'directly owned' by the decedent 'immediately before death.' " *Carlton,* 512 U.S. at 29, 114 S.Ct. 2018. This limiting amendment was effective as of the original effective date of the statute, October 22, 1986. The Internal Revenue Service disallowed Carlton's deduction because the decedent had not owned the stock "immediately before death." The Supreme Court held that "the 1987 amendment's retroactive application meets the requirements of due process." *Id.* at 32, 114 S.Ct. 2018.

The Court stated:

Congress' purpose in enacting the amendment was neither illegitimate nor arbitrary. Congress acted to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss. There is no plausible contention that Congress acted with an improper motive, as by targeting estate representatives such as Carlton af-

ter deliberately inducing them to engage in ESOP transactions.... We cannot say that its decision was unreasonable. *Id.* It then pointed out:

> Congress acted promptly and established only a modest period of retroactivity.... Here, the actual retroactive effect of the 1987 amendment extended for a period only slightly greater than one year.

*Id.* at 32–33, 114 S.Ct. 2018.

The Court "conclude[d] that [because] retroactive application of the 1987 amendment to section 2057 is rationally related to a legitimate legislative purpose, we conclude that the amendment as applied to Carlton's 1986 transactions is consistent with the Due Process Clause." *Id.* at 35, 114 S.Ct. 2018.

Although *Carlton* involved different provisions of the Internal Revenue Code and a different factual situation, the reasoning and analysis of that decision are equally applicable here and call for the same conclusion: the retroactive application of the ten percent additional tax does not violate due process.

If, when Congress enacted the Taxpayer Relief Act of 1997, it had been aware that the legislation excepted from the ten percent additional tax persons in Kitt's situation, it undoubtedly would have changed the statute to subject them to the tax. Here, as in *Carlton*, "[t]here is little doubt that the [1998] amendment to [the 1997 statute] was adopted as a curative method." 512 U.S. at 31, 114 S.Ct. 2018. Although the "revenue losses" from this statutory "mistake" may not have been as "significant" as those in *Carlton*, *id.* at 32, 114 S.Ct. 2018, there nevertheless was a revenue loss, and Congress was endeavoring to make it up. Here, also, as in *Carlton*, "[t]here is no plausible contention that Congress acted with an improper motive." *Id.*

Here, too, "Congress acted promptly and established only a modest period of retroactivity." *Id.* Indeed, the retroactive period of this legislation was substantially shorter than the retroactive period upheld in *Carlton:* here only seven months, as against fourteen months in *Carlton.*

What the Supreme Court concluded in *Carlton* is equally applicable in this case: "[B]ecause ... retroactive application of the [1998] amendment to [the 1997 Act] is rationally related to a legitimate purpose ... the amendment as applied to [Kitt's 1998] transaction is consistent with the Due Process Clause." *Id.* at 35, 114 S.Ct. 2018.

■ B. The Kitts contend, however, that the ten percent additional tax is actually a penalty and that the foregoing analysis cannot properly be applied in this case. They contend it is a penalty because it is intended not to raise revenue, but to deter early withdrawals from IRAs or those for impermissible purposes and to punish those who make such withdrawals.

We reject the Kitts' characterization of the ten percent additional tax as a penalty. A penalty is imposed as punishment for particular conduct. *See, e.g., Austin v. United States,* 509 U.S. 602, 622, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (defining a penalty as "payment to a sovereign as punishment for some offense"). Although a penalty also is intended to and does deter others from engaging in the penalized conduct, the converse does not follow: Government action that deters or influences conduct is not necessarily a penalty. Yet that converse proposition is at the heart of the Kitts' argument.

Moreover, as the Kitts recognize, their argument relates to the basic ten percent additional tax itself, not to its retroactive application to Kitt's transaction. Since Kitt already had made his withdrawal when the 1998 legislation was enacted, the

application of the ten percent tax to his closed transaction could not have any deterrent effect upon him. In their brief the Kitts have stated, however, that they are not challenging the ten percent tax on its face, but only as applied to this particular transaction.

The Kitts contend that the government itself recognized that the ten percent additional tax was a penalty. They rely upon a letter to the Kitts from the Director of the Internal Revenue Service Ogden Service Center in Utah denying the Kitts' refund claim. The letter states that the claim "is based on your view that certain tax laws are unconstitutional," that "[o]nly the courts have authority to rule on such matters," and that "our records indicate that you are liable for the 10% penalty on early distribution." This passing characterization of the ten percent additional tax by the Director of the local Internal Revenue Service Service Center as a "penalty on early distributions" does not make the tax a penalty.

More than sixty years ago the Supreme Court, speaking through then Justice Stone, stated: "Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens." *Welch v. Henry,* 305 U.S. 134, 146, 59 S.Ct. 121, 83 L.Ed. 87 (1938), quoted with approval in *United States v. Darusmont,* 449 U.S. 292, 298, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981). We see no reason to view the tax involved in this case as anything other than what it purports to be: an additional tax of ten percent. It is not a penalty.

### III

The precise theory of the Kitts' takings claim is unclear. In their original 1998 federal tax return, they paid the ten per-

cent additional tax without protest. Although the Internal Revenue Service subsequently denied their claim for a refund, it is difficult to view that action as a taking. The only other basis for their takings claim is that the enactment of the 1988 statute that made the ten percent additional tax retroactive to the first of that year somehow took their property. Neither theory, however, would establish a valid takings claim.

■ A takings claim must identify a specific interest in property that has been taken. *See, e.g., Phillips v. Wash. Legal Found.,* 524 U.S. 156, 160, 118 S.Ct. 1925, 141 L.Ed.2d 174 (holding that interest earned on certain client accounts held by an attorney was " 'private property' ... for purposes of the Takings Clause of the Fifth Amendment"); *First Hartford Corp. Pension Plan & Trust v. United States,* 194 F.3d 1279, 1288 (Fed.Cir.1999) (identifying "a cognizable property interest for purposes of a Fifth Amendment takings claim" as "any eventual liquidation surplus"); *Branch v. United States,* 69 F.3d 1571, 1575 (Fed.Cir.1995) (noting that "[i]n analyzing a takings claim a court must first determine what was taken"); *Florida Rock Indus., Inc. v. United States,* 18 F.3d 1560, 1572 n. 32 (Fed.Cir.1994) (observing that the "[i]dentification of a specific property interest ... should pose little problem for property lawyers" before reciting various categories of property).

■ Here the purported taking is nothing other than the liability the 1998 statute imposed on the Kitts to pay the additional tax. "[T]he mere imposition of an obligation to pay money ... does not give rise to a claim under the Takings Clause of the Fifth Amendment." *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1340 (Fed.Cir.2001); *see also Atlas Corp. v. United States,* 895 F.2d

745, 756 (Fed.Cir.1990) ("Requiring money to be spent is not a taking of property.").

In some situations money itself may be the subject of a taking, for example, the government's seizure of currency or its levy upon a bank account. *See, e.g., Sommers Oil Co. v. United States,* 241 F.3d 1375, 1381 (Fed.Cir.2001) (holding that takings claim that government seized $41,000 in currency was sufficient to withstand a motion to dismiss for failure to state a claim upon which relief could be granted); *United States v. Minor,* 228 F.3d 352, 356 (4th Cir.2000) (considering whether the government provided adequate notice when seizing $5,214 in currency and noting that "[t]he failure to provide adequate notice of an administrative forfeiture raises the prospect of the government taking ownership of private property while the former owner of that property remains wholly ignorant of the transaction"). In the present case, however, the government did not seize or take any property of the Kitts. All it did was to subject them to a particular tax to which they previously had not been subject. That government action did not constitute a taking of the amount of the tax they had to pay.

■ For retroactive taxation to be a taking, it must be "so arbitrary as to constrain to the conclusion that it was not the exertion of taxation." *Brushaber v. Union Pac. R.R. Co.,* 240 U.S. 1, 24–25, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *see Nichols v. Coolidge,* 274 U.S. 531, 542–43, 47 S.Ct. 710, 71 L.Ed. 1184 (1927) (describing the standard as whether the tax was "so arbitrary and capricious as to amount to confiscation"); *Houck v. Little River Drainage Dist.,* 239 U.S. 254, 265, 36 S.Ct. 58, 60 L.Ed. 266 (1915) (noting that taxation will be considered a taking only if it is a "flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property"). For the reasons previously given in rejecting the Due Process conten-

tion, the ten percent additional tax does not even approach such action. Indeed, the Supreme Court has observed "that it would be 'surprising indeed to discover' that a statute that satisfied the Due Process Clause nonetheless violated the Takings Clause." *Branch v. United States,* 69 F.3d 1571, 1578 (Fed.Cir.1996) (quoting *Concrete Pipe & Prods., Inc. v. Constr. Laborers Pension Trust,* 508 U.S. 602, 641, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 233, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)).

## IV

■ Finally, the Kitts argue that the retroactive application of the additional tax violates the prohibition in the Eighth Amendment against the imposition of "excessive fines." The application of the additional tax, however, was not a "fine" under that clause.

■ A fine under the Eighth Amendment is a payment to the government that "constitute[s] punishment for an offense." *United States v. Bajakajian,* 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). As we have shown in rejecting the Kitts' Due Process argument, the ten percent additional tax is not a penalty. A fortiori, it is not punishment for an offense. Although Kitt's withdrawal from his rolled-over Roth IRA subjected him to the ten percent additional tax, it violated no law of the United States and, as the Kitts recognize, was not a criminal offense.

## CONCLUSION

The judgment of the Court of Federal Claims dismissing the Kitts' complaint is *AFFIRMED.*