Douglas Q. KITT and Nancy C. Kitt, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 01–5002.

United States Court of Appeals, Federal Circuit.

May 1, 2002.

Nancie C. Marzulla, Defenders of Property Rights, of Washington, DC, filed a combined petition for rehearing and rehearing en banc for plaintiffs-appellants. With her on the brief was Roger J. Marzulla.

Steven W. Parks, Attorney, Tax Division, Department of Justice, of Washington, DC, for defendant-appellee.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

## ON PETITION FOR REHEARING

FRIEDMAN, Senior Circuit Judge.

1. In their petition for rehearing, the Kitts contend that our prior opinion, reported at 277 F.3d 1330, was based upon a misunderstanding of pertinent provisions of the Internal Revenue Code (26 U.S.C.) governing taxation of withdrawals from individual retirement accounts ("IRAs"). We have reexamined the provisions in light of the Kitts' contention, and conclude that in one respect, our prior analysis was incorrect, but that the error requires no change in our decision.

Under the Employee Retirement Income Security Act, Pub.L. No. 93–406, 88 Stat. 829 (1974) (codified as amended at 26 U.S.C. § 408 (1976)), individuals could make contributions to IRAs that could be deducted from gross income. When the account owner withdrew money from the IRA upon reaching a certain age or for specified purposes relating to retirement, the contributions, together with whatever amounts those contributions had earned, would be taxed as part of gross income. 26 U.S.C. § 408(d)(1) (2000). Congress also provided that the tax of an IRA account holder who made an unqualified withdrawal from his account (i.e., before reaching the specified age or for a non-retirement related purpose) would be "increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income." 26 U.S.C. § 72(t) (2000). Since withdrawals from IRAs were taxed as part of gross income, and thus were subject to § 72(t), unqualified withdrawals would be subject to an additional tax of ten percent of the amount withdrawn.

In 1997 Congress provided for a new type of IRA—the Roth IRA. Taxpayer Relief Act of 1997, Pub.L. No. 105–34, 111 Stat. 788 (codified as amended in scattered sections of 26 U.S.C.). Its distinguishing tax characteristic was that contributions to a Roth IRA were not deductible from gross income (and thus in effect were taxable when made), 26 U.S.C. § 408A(c)(1) (2000), but qualified withdrawals were not included in gross income, 26 U.S.C. § 408A(d)(1)(A) (Supp. III 1997) (current version at 26 U.S.C. § 408A(d)(1) (2000)). In other words, taxwise the Roth IRA was the opposite of the so-called traditional IRA.

Although qualified withdrawals from Roth IRAs were not includible in gross income, unqualified withdrawals were, and

thus would appear to be subject to the ten percent additional tax under § 72(t). Such withdrawals, however, would be treated "as made from contributions to the Roth IRA to the extent that such distribution, when added to all previous distributions from the Roth IRA, does not exceed the aggregate amount of contributions to the Roth IRA." 26 U.S.C. § 408A(d)(1)(B) (Supp. III 1997) (repealed 1998). To the extent the amount withdrawn was less than the amount contributed, then, the withdrawals would not be included in gross income and thus would not be subject to the ten percent additional tax in § 72(t). Any withdrawal that exceeded the total amount of contributions would be subject to the additional tax. *See* H.R. Conf. Rep. 106–228 ("To the extent attributable to earnings, distributions from a Roth IRA that are not qualified distributions are includible in income and subject to the 10 percent early withdrawal tax.").

The result of this statutory scheme was that, unlike the ten percent additional tax on unqualified withdrawals from traditional IRAs, in the case of unqualified withdrawals from Roth IRAs, the basis upon which the ten percent additional tax would be calculated would depend upon the amount the taxpayer's contributions had earned, rather than on the total amount withdrawn. Of course, if the amount of the unqualified withdrawal was less than the amount contributed to the Roth IRA, the withdrawn amount would not be subject to the additional tax. Since Mr. Kitt's unqualified withdrawal of $53,000 from his Roth IRA was less than the $63,000 he had contributed by converting his traditional IRA, under the foregoing provisions none of his withdrawal from the Roth IRA would appear subject to the ten percent additional tax on unqualified withdrawals.

The analysis is further complicated by the provisions in the 1997 statute that govern individuals who converted traditional IRAs into Roth IRAs (a process known as "rolling over"). The amounts rolled over could not be deducted from, but would be included in, gross income (although the tax on those amounts could be spread out over four years). 26 U.S.C. § 408A(d)(3)(A) (Supp.III.1997) (amended 1998). Thus, if an individual made an unqualified withdrawal from a Roth IRA (either funded by a rollover or directly funded), the withdrawal would not be included in his gross income (and therefore not taxable) except for any portion "attributable to earnings." Under § 408A(d)(3)(A)(i), however, the rollover is treated as if it were a direct contribution to a Roth IRA. Therefore, only interest earned after the rollover would be included in gross income (and subject to the additional tax under § 72(t)). In other words, an individual who rolled over funds from his traditional IRA into a Roth IRA and immediately withdrew any amount up to the amount he rolled over, would not be subject to the ten percent additional tax on the withdrawal under § 72(t).

Shortly after the 1997 tax statute became effective on January 1, 1998, Congress recognized that by following such a course, taxpayers could, as a practical matter, make unqualified withdrawals from traditional IRAs without incurring the ten percent additional tax. To eliminate that possibility, Congress terminated the provision treating unqualified withdrawals from Roth IRAs as if made from contributions (26 U.S.C. § 408A(d)(1)(B) (repealed 1998)), and enacted a "[s]pecial rule for applying section 72," 26 U.S.C. § 408A(d)(3)(F) (2000). Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, 112 Stat. 685. That rule provides that any withdrawals from Roth IRAs made within five years of rollover will be presumed to have come from the rolled over funds, and "section 72(t) shall be applied as if such portion

were includible in gross income." 26 U.S.C. § 408A(d)(3)(F)(i) (2000). Under the new rule, therefore, § 72(t) applies to non-qualified withdrawals from either traditional IRAs or Roth IRAs.

During the period between the effective date of the 1997 statute and the "new rule," Mr. Kitt rolled over his traditional IRA into a Roth IRA and less than two months later made an unqualified withdrawal of most of the funds in the Roth IRA. Under the original 1997 statute the ten percent additional tax probably would not have been applicable to the $53,000.00 that Mr. Kitt withdrew from his Roth IRA.

The question in this case, however, is not whether the Kitts' withdrawal was subject to the additional ten percent tax under the 1997 statute, but whether the retroactive application of that tax under the 1998 amendment to the withdrawal was constitutional. For the reasons set forth in our original opinion we hold that it was. Nothing in the petition for rehearing leads us to change that conclusion.

2. In rejecting the Kitts' due process claim, we applied the standard the Supreme Court set forth in *United States v. Carlton*, 512 U.S. 26, 30–31, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), for determining the validity of retroactive tax legislation under the Due Process Clause: "Whether [such application] is itself justified by a rational legislative purpose." We also relied on the substantive decision in *Carlton*, where "the Court rejected a due process challenge to the retroactive application of a tax statute in circumstances similar to the present case." *Kitt*, 277 F.3d at 1334.

 The Kitts challenge our reliance on *Carlton* because, they assert, *Carlton* "declar[ed]" that the "rational purpose standard" was inappropriate as applied to retroactive imposition of a "wholly new tax." The present case, however, like *Carlton*, does not involve the retroactive application of a "wholly new tax." The ten

percent additional tax on unqualified withdrawals from IRA accounts dates from 1974. The 1998 statute that the Kitts challenge merely applied that tax to the particular circumstances here involved: the rolling over of a traditional IRA into a Roth IRA followed almost immediately by a withdrawal for a non-qualifying purpose. The application of an existing tax statute to a different factual situation does not constitute a "wholly new tax." *Carlton* properly applies to the present case and, as we stated in our opinion, "points the way to our decision here." *Kitt*, 277 F.3d at 1334.

3. The Kitts also assert that our prior decision "ignored" *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), which "stands for the proposition that retroactive legislation is 'unconstitutional if it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience.'" That quotation, however, is from the plurality opinion in that case by Justice O'Connor, in which only three other justices joined. That opinion concluded that the particular retroactive application of the Coal Industry Retiree Health Benefit Act of 1992 constituted a taking. Justice Kennedy in a concurring opinion and Justice Breyer in a dissenting opinion in which three other justices joined, however, concluded that there had not been a taking. As this court stated en banc in *Commonwealth Edison Co. v. United States*, 271 F.3d 1327 (2001), "we are obligated to follow the views of that majority." *Id.* at 1339 (footnote omitted).

Indeed, the Kitts' quotation distorts what the plurality concluded in *Eastern Enterprises*. The plurality did not state that "retroactive legislation *is* 'unconstitutional if it imposes ...'", but only that the

Court's prior decisions "have left open the possibility that legislation *might be* 'unconstitutional if it imposes. . . .' " 524 U.S. at 528–29, 118 S.Ct. 2131 (emphases added).

4. The Kitts make other arguments. Some of them have been adequately dealt with in our prior opinion. The remainder do not require discussion.

## CONCLUSION

The petition for rehearing is granted to the extent that the analysis and conclusions in this opinion are inconsistent with our prior opinion, which is modified accordingly. The principal changes would be made in the language at 277 F.3d at 1333 beginning at line 4 of the first column through the first full paragraph in that column. In all other respects, rehearing is denied.