NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CARL SHELDEN,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2018-1381

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-01507-LAS, Senior Judge Loren A. Smith.

---

Decided: July 12, 2018

---

CARL SHELDEN, Goodyear, AZ, pro se.

IGOR HELMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER.

---

Before PROST, *Chief Judge,* BRYSON and O'MALLEY,
*Circuit Judges.*

PER CURIAM.

Appellant Carl Shelden ("Shelden"), proceeding *pro se*, appeals from the judgment of the U.S. Court of Federal Claims ("Claims Court") dismissing his complaint for lack of subject-matter jurisdiction. *See Shelden v. United States* (*Dismissal Order*), No. 17-1507 C, 2017 WL 5494043 (Ct. Cl. Nov. 16, 2017). For the reasons that follow, we *affirm*.

## BACKGROUND

On October 13, 2017, Shelden, proceeding *pro se*, filed a complaint in the Claims Court seeking several forms of relief. *See* Compl., *Shelden v. United States*, No. 1:17-cv-01507-LAS (Ct. Cl. Oct. 13, 2017), ECF No. 1 ("Compl.").[1]

---

[1] Shelden is not a stranger to this court. In 1979, he and his wife sold real property to two men who were later convicted of violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *Shelden v. U.S.* (*Shelden II*), 7 F.3d 1022, 1024 (Fed. Cir. 1993), *abrogated on other grounds by Bennis v. Michigan*, 516 U.S. 442 (1996). This property was thereafter forfeited to the United States pursuant to 18 U.S.C. § 1963, and was significantly damaged by erosion in the mid-1980s. *Id.* at 1024–26. Shelden and his wife filed suit in the Claims Court seeking compensation for the diminution in the value of their property caused by the erosion, but the trial court held that they, as mortgagees of property forfeited to the United States, suffered no taking by the government that would be compensable under the Fifth Amendment. *Shelden v. United States* (*Shelden I*), 26 Cl. Ct. 375 (1992). We reversed and remanded for a determination of just compensation. *Shelden II*, 7 F.3d at 1031. On remand, the Claims Court resolved certain disputes

Shelden alleges that he—a 75-year-old veteran of the Navy and the Marines who is of American Indian and Jewish ancestry—and his family have long "been forced to endure and exposed to antisemitism and hate crimes for decades" and have "been traumatized and tortured and harassed in the workplace." *Id.* ¶¶ 3, 242. He accuses the U.S. Department of Justice, the Federal Bureau of Investigation, a local police department, a municipal court judge, and the States of California, Florida, and Arizona (together, "Defendants") of committing tortious acts against him and his family over a span of approximately thirty-four years. *See id.* ¶ 3; *id.*, Ex. B at ¶ 58.

More specifically, Shelden asserts the following causes of action against Defendants: (1) violations of his and his son's First, Fourth, Fifth, and Sixth Amendment rights under the U.S. Constitution, *id.* ¶¶ 92–109; (2) refusal to investigate, prosecute, and prevent crimes against humanity and civil rights violations committed against him and his son, both of whom are protected minorities, *id.* ¶¶ 110–117; (3) the commission of various torts, including defamation, assault, torture, conspiracy, stalking, and intentional and negligent infliction of emotional distress, *id.* ¶¶ 118–149; and (4) obstruction of justice and commission of antitrust violations, largely in relation to Shelden's son's businesses, *id.* ¶¶ 150.[2] Shel-

---

vis-à-vis fees and expenses, and the parties settled their cross-appeals from this judgment. *Shelden v. United States* (*Shelden III*), 34 Fed. Cl. 355 (1995); *Shelden v. United States* (*Shelden IV*), 152 F.3d 946 (Fed. Cir. 1998) (Table). Shelden's complaint in this case contains a number of allegations relating to this incident. *See* Compl. ¶¶ 177–184.

[2] Shelden's son, who claims to have written the appeal brief in this case, *see* Appeal Br. at 3, previously filed a complaint in the U.S. District Court for the District of

don sought injunctive relief against Defendants and money damages in the amount of $24 billion. *Id.* ¶¶ 240, 244, 247b, 251, 254.

On November 16, 2017, the Claims Court issued an opinion and order, dismissing Shelden's complaint for lack of subject-matter jurisdiction and entering judgment against him. *Shelden*, 2017 WL 5494043, at *3. First, it dismissed all of Shelden's claims against states, local government entities, and local government officials, noting that it lacks "jurisdiction over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees; jurisdiction only extends to suits against the United States itself." *Id.* at *2 (quoting *Anderson v. United States*, 117 Fed. Cl. 330, 331 (2014)). Second, it rejected Shelden's argument that his constitutional violations are compensable under *Bivens v. Six Unknown Named Agents of la Bureau of Narcotics*, 403 U.S. 388 (1971), holding that the Tucker Act does not provide the Claims Court with jurisdiction over claims against indi-

---

Columbia on behalf of himself and two limited liability companies, alleging many of the same facts alleged here. *See* Compl., *Shelden v. Dep't of Justice*, Civ. Action No. 16-590 (JEB) (D.D.C. Mar. 30, 2016), ECF No. 1. The district court dismissed this complaint because the allegations therein were "so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." *Shelden v. Dep't of Justice*, Civ. Action No. 16-590 (JEB), 2016 WL 8286142, at *1 (D.D.C. Mar.31, 2016). The U.S. Court of Appeals for the District of Columbia Circuit affirmed, and the U.S. Supreme Court denied certiorari. *Shelden v. U.S. Dep't of Justice*, 672 F. App'x 33 (D.C. Cir. Oct. 19, 2016) (Mem.), *cert. denied*, 137 S. Ct. 1347 (2017).

vidual federal officials. *Id.* (citations omitted). It then held that it lacks jurisdiction over Shelden's constitutional, statutory, and tort claims against the United States, reasoning that such claims either are not "money-mandating" under the Tucker Act, 28 U.S.C. § 1491(a)(1), or must be brought in federal district courts. *Id.* at *2–3. Finally, it held that Shelden's requests for various forms of assistance and injunctive relief are not properly before it, because "[t]he Tucker Act does not provide independent jurisdiction over... claims for equitable relief." *Id.* (quoting *Taylor v. United States*, 113 Fed. Cl. 171, 173 (2013)).

Shelden appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Although the court is sympathetic to Shelden's alleged medical conditions, the foreclosure of his real property and the legal battle that ensued, and historical indignities against minority groups to which he alleges he belongs, the Claims Court did not err in dismissing his complaint for lack of subject-matter jurisdiction.

"In a given case, whether Tucker Act jurisdiction exists is a question of law that we review without deference to the decision of the trial court." *Metz v. United States*, 466 F.3d 991, 995 (Fed. Cir. 2006) (citation omitted). Shelden, as the petitioner below, "bears the burden of proving that" the Claims Court "possessed jurisdiction over his complaint." *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001) (citing *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)). Even though pleadings filed by *pro se* plaintiffs are subject to less stringent standards than are formal pleadings drafted by lawyers, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), the fact that he acted *pro se* cannot excuse failures in demonstrating jurisdictional requirements, *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995). Finally, the Claims Court is entitled to raise the issue of subject-matter

jurisdiction *sua sponte*. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004).

Shelden asserted in his complaint that the Claims Court could exercise jurisdiction over his claims under 28 U.S.C. § 1491, a provision of the Tucker Act. *See* Compl. ¶ 46a. He does not cite to this provision or address the jurisdictional issue in his appeal brief, however. *See generally* Appellant Br.[3] The Tucker Act grants the Claims Court jurisdiction over "claims for money damages 'against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.'" *Moden v. United* States, 404 F.3d 1335, 1341 (Fed. Cir. 2005) (quoting 28 U.S.C. § 1491(a)(1)).

None of Shelden's claims are within the jurisdiction of the Claims Court. First, the Claims Court does not possess jurisdiction over claims brought against persons, entities, and territories other than the United States. As the Supreme Court has held, the Claims Court's "jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, . . . and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (citation omitted). Thus, Shelden's claims against Defendants other than the United States are not cognizable. Moreover, to the extent Shelden asserts claims against government officials in their individual capacities for violations of his constitutional rights,

---

[3]    In July 2018, the court received a document filed by Shelden's son, which likewise does not address the issue of jurisdiction. *See* Letter, *Shelden v. United States*, No. 18-1381 (Fed. Cir. July 5, 2018), ECF No. 25.

such "*Bivens* actions" lie outside the jurisdiction of the Claims Court. *Brown v. United States*, 105 F.3d 621, 624 (Fed. Cir. 1997).

Second, the Claims Court lacks jurisdiction over Shelden's claims asserting violations of his First, Fourth, and Sixth Amendment rights. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) ("We agree with the Court of Claims that the first amendment, standing alone, cannot be so interpreted to command the payment of money."); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over a such a violation."); *Smith v. United States*, 36 F. App'x 444, 446 (Fed. Cir. 2002) (holding that the Court of Federal Claims "lacks jurisdiction because the Sixth Amendment does not obligate the United States to pay money damages"); *Omran v. United States*, 629 F. App'x 1005, 1008 (Fed. Cir. 2015) (same). Nor does it possess jurisdiction over Shelden's Fifth Amendment claims to the extent such claims are brought under that Amendment's Due Process Clause. *See Collins v. United States*, 67 F.3d 284, 288 (Fed. Cir. 1995) (holding that the Fifth Amendment's "due process clause does not obligate the government to pay money damages").

Whether the Claims Court has jurisdiction over claims brought under the Fifth Amendment's Takings Clause requires additional scrutiny. Although we have recognized that "the Takings Clause of the Fifth Amendment is money-mandating," subject-matter jurisdiction over such a claim only exists when a petitioner asserts a non-frivolous claim. *Moden*, 404 F.3d at 1340–41. That is, Shelden must "identify[] a valid property interest" under the Fifth Amendment and show a "governmental action [that] amounted to a compensable taking of that property interest." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005).

Shelden has not made this showing. He clarifies in his brief that his son's "life, career, medical/pharma profits, [and] education" were "taken," and that there was "theft of property of [Mr. Shelden's] assets in divorce, . . . business revenues expectedly in the billions of dollars, . . . taking of family time, taking of enjoyment and travel, taking of life, taking of wealth [and] taking of businesses, etc." Appellant Br. 19 (emphasis omitted). Of these, only Shelden's son's revenue, profits, and property constitute "tangible property [that] may be the subject of takings claims." *Conti v. United States*, 291 F.3d 1334, 1338–39 (Fed. Cir. 2002). Shelden has not, however, plausibly alleged how or by whom this property was taken. *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853–54 (Fed. Cir. 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also Kitt v. United States*, 277 F.3d 1330, 1336 (Fed. Cir. 2002) (stating that the analysis of a takings claim requires identifying the precise governmental action that is the subject of the claim). Moreover, Shelden lacks standing to assert a taking of his *son*'s property. *See Air Pegasus*, 424 F.3d at 1215 ("As an initial matter, a claimant seeking compensation from the government for an alleged taking of private property must, at a minimum, assert that *its* property interest was actually taken by the government action.").

Moreover, because a "Tucker Act suit does not lie for an executive taking not authorized by Congress, expressly or by implication," the Claims Court lacks jurisdiction over takings claims in which the petitioner asserts the subject taking was not authorized. *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) (citations omitted) (emphasis added) (rejecting the petitioner's theory that compensation for a taking must be paid where a mistake is made in the Army Corps of Engineer's permit process, because "[a] mistake may give rise to a due process claim, not a taking claim"). Here, Shelden affirmatively argues that the United States and/or its officers

took his and his son's property in violation of "Congressional orders," Appellant Br. 49, and subject to an "unlawful" "conspiracy," *id.* at 55. Additionally, to the extent Shelden claims that state courts took his property without just compensation, "the Court of Federal Claims cannot entertain a taking claim that requires the court to scrutinize the actions of another tribunal." *Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (internal quotation marks omitted).

Third, we have recognized that, because the Claims Court "is a court of limited jurisdiction," it "lacks jurisdiction over tort actions against the United States." *Brown*, 105 F.3d at 623 (citing 28 U.S.C. § 1491(a); *Keene Corp. v. United States*, 508 U.S. 200, 214 (1993)). We have also held that the Claims Court lacks jurisdiction to adjudicate claims brought under federal or state criminal statutes, none of which are money-mandating. *See Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994). Therefore, the Claims Court lacks jurisdiction over Shelden's defamation, assault, torture, conspiracy, stalking, intentional and negligent infliction of emotional distress, and obstruction of justice claims. The same is true of Shelden's assertions on appeal that certain individuals "intentional[ly] transfer . . . sexually transmitted disease to [Mr. Shelden's] son," "advocate[ed] violent means to effect political and economic change to over-throw the Government and attack and kill American royalty," and "falsely charg[ed] [his] son with animal abuse [and] falsely claiming . . . he is a pedophile." Appellant Br. 13.

The Claims Court likewise lacks jurisdiction over Shelden's claims for violations of the Civil Rights Act, the antitrust laws, and RICO, as such claims, by statute, vest exclusively in the federal district courts. 28 U.S.C. § 1343(a)(4) (2011) ("The district courts shall have original jurisdiction of any civil action . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights. . . .");

*Jefferson v. United States*, 104 Fed. Cl. 81, 89 (2012) (collecting cases holding that the Claims Court lacks jurisdiction to entertain claims brought under 42 U.S.C. §§ 1983 or 1985); *Marrese v. Am. Acad. Orthopaedic Surgeons*, 470 U.S. 373, 379–80 (1985) (holding that federal antitrust claims are within the exclusive jurisdiction of the federal district courts); *Trevino v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (explaining that claims under the RICO statute do not mandate the payment of money); *Hufford v. United States*, 87 Fed. Cl. 696, 702 (2009) (holding that the Claims Court lacks jurisdiction over RICO claims).

Finally, the Claims Court "has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (quoting *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 859 (Fed. Cir. 1992)). This is because the Tucker Act only permits equitable relief that is "an incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2). Shelden has not asserted a money-mandating claim over which the Claims Court has subject-matter jurisdiction, and therefore equitable relief is not available to him.

## CONCLUSION

We have considered Shelden's remaining arguments and find them unpersuasive. Accordingly, the judgment of the U.S. Court of Federal Claims dismissing Shelden's complaint for lack of subject-matter jurisdiction is

## **AFFIRMED**

### COSTS

No costs.