GOLDSTEIN, GOLDMAN, KESSLER & UNDERBERG, Appellant, v 4000 EAST RIVER ROAD ASSOCIATES, Tenant. ICM REALTY, Respondent.

Fourth Department, November 10, 1978

**APPEARANCES OF COUNSEL**

*Goldstein, Goldman, Kessler & Underberg (Jerrold B. Reilly* of counsel), appellant *pro se.*

*Nixon, Hargrave, Devans & Doyle (Edward J. Burns* and *Sherry S. Kraus* of counsel), for respondent.

## OPINION OF THE COURT

*Per Curiam.*

Petitioner is a distinguished Rochester law firm. By this special proceeding it seeks to establish an attorney's charging lien for services rendered in a tax certiorari proceeding.

In 1974 petitioner was retained by respondent 4000 East River Road Associates (ERRA) in a proceeding against the Town of Henrietta to contest the assessment on certain real property improved as an apartment complex. The property was operated by ERRA as tenant under a ground lease from the owner, respondent ICM Realty. Under the terms of the lease, ERRA undertook to pay all taxes levied against the property and was given the right, without objection from ICM and with its promised cooperation, to initiate legal proceedings to reduce the property assessments but to do so without expense to ICM Realty. As a result of petitioner's efforts, ERRA and the town compromised the certiorari proceeding, and a court order was signed substantially reducing the property's assessment for the future tax years 1974-1975, 1975-1976 and 1976-1977. No tax was refunded to respondents. Under the written retainer with ERRA, petitioner's services were to be compensated by a fee contingent upon the dollar savings realized as a result of the assessment reductions for those three years but was to be not less than a stated minimum charge. ERRA breached its lease and vacated the premises before the tax years in which the assessments were reduced and ICM Realty resumed possession. Petitioner has not been paid for its services and in January, 1977 it instituted this special proceeding to obtain a charging lien on the gross revenues of ICM Realty. It alleges that the savings in tax dollars resulting from its efforts were in excess of $200,000 and that $70,724.19 fees and disbursements are owed it under the terms of the written retainer. ERRA defaulted and Special Term granted ICM Realty's motion and dismissed the petition.

██ The history and development of attorney's liens have been discussed at length in decisions of the Court of Appeals and there is no need to discuss them further here (see *Matter of Heinsheimer,* 214 NY 361, 364-367 [CARDOZO, J.]; *Fischer-Hansen v Brooklyn Hgts. R. R. Co.,* 173 NY 402). It is familiar law that an attorney may secure payment for his services by asserting a general or retaining lien on books and papers of a client in his possession. In the absence of such possession, his security for payment is limited to a special or charging lien

upon the proceeds produced by particular litigation for services in connection with it. If the attorney obtains possession of such proceeds he has a general possessory lien, of course, but if he does not, he is limited to a charging lien, in appropriate cases, upon the proceeds for the services rendered which created them. This nonpossessory lien is justified because it is the attorney who has created the fund out of which he is paid by his efforts. Accordingly, he may trace the proceeds into the hands of a third person or hold a defendant responsible if the defendant knowingly pays the client and frustrates collection of the attorney's fee *(Fischer-Hansen v Brooklyn Hgts. R. R. Co., supra)*. The *sina qua non* for asserting a nonpossessory charging lien is the existence of proceeds created by the attorney's efforts. Thus, the statute provides: "From the commencement of [a] * * * special * * * proceeding in any court * * * the attorney who appears for a party has a lien upon his client's cause of action * * * which attaches to a * * * final order in his client's favor, and the proceeds thereof in whatever hands they may come" (Judiciary Law, § 475; see, also, *Matter of Desmond v Socha,* 38 AD2d 22, affd 31 NY2d 687).

■ The only issue before the court in this case is whether petitioner is entitled to a lien for its services on the gross revenues of ICM Realty.[1] That decision turns on our determination of whether "proceeds" were created by petitioner's successful efforts in the tax certiorari proceedings. It will help narrow the issue to note that there are decisions upholding charging liens upon proceeds if a tax has been refunded (see, e.g., *Matter of Carsons Jamaica v Boyland,* 19 Misc 2d 778), or if there exists a reserve fund for taxes which has been conserved by reason of the attorney's successful efforts in reducing the anticipated taxes (see, e.g., *Continental Bank & Trust Co. of N. Y. v Wohlbro Constr.,* 256 App Div 992; *People*

---

1. There is no contention that petitioner's fees are not reasonable and concededly they are due. Judgment on the retainer agreement may be obtained in a plenary action against ERRA but no lien is available against it because it has no proceeds of the litigation. While the equities of petitioner's claim against ICM Realty are appealing, we are not called upon to determine whether relief may be obtained against it in a plenary action in implied or quasi contract (see generally *Miller v Schloss,* 218 NY 400; Ann 78 ALR2d 318; cf. *Matter of Loomis,* 273 NY 76; *Schuler-Haas Elec. Corp. v Wager Constr. Corp.,* 57 AD2d 707). In such an action *quantum meruit* recovery would not necessarily be limited to an hourly rate rather than the contingent fee (see *Matter of De Graff, Foy, Conway & Holt-Harris v McKesson & Robbins,* 31 NY2d 862).

*ex rel. New York Trust Co. v Sexton,* 176 Misc 761). These decisions may be reconciled with the requirement that there be proceeds in an identifiable fund upon which the lien attaches. On the other hand, it is clear that a lien asserted in 1975, at the time that this case was settled, would necessarily have failed, for without knowledge of the rate in future tax years, it would be impossible to determine that the reduction in assessment had in fact resulted in a reduction of the taxes paid. The tax rate might thereafter increase to the point where there were no dollar savings to the client, the reduction in assessment notwithstanding.

In this case there has been a measurable saving of taxes for three tax years and thus the amount of the contingent fee is certain. The question remains whether those savings constitute proceeds[2] subject to a lien within the meaning of the statute. It is the position of petitioner and the dissenter that a part of ICM Realty's gross revenues was "saved" as a result of the reduction in taxes, revenues which were thereby available to it for other uses and that the saved revenues constitute proceeds upon which the lien attaches.

First, it should be noted that the record does not demonstrate that either ICM Realty or the real property in question earned any revenue, to say nothing of "saving" any revenue upon which the lien could attach. Nevertheless, assuming that there were revenues, a majority of the court believe that no lien is available here and that the result urged upon us would result in unwarranted judicial legislation establishing a nonpossessory attorney's lien encumbering a large portion of his client's general assets not identifiable with any specific litigation.

It is elemental knowledge that taxes are a charge upon real property and that the amount of the tax debt is determined by multiplying the assessed value by the tax rate. If the taxpayer

---

2. By way of illustration "proceeds" are not created by successful litigation which results in: enhancing the value of real estate by securing a zoning change from residential to commercial *(Matter of Desmond v Socha,* 38 AD2d 22, affd 31 NY2d 687, *supra);* a declaration that reconnection fees charged to gas users were illegal and uncollectible *(Kovarsky v Brooklyn Union Gas Co.,* 170 Misc 855, affd 261 App Div 822); a declaration that a real property mortgage is invalid, and staying its foreclosure *(Matter of Snitow v Jackson,* 4 Misc 2d 351 [EAGER, J.]). Conversely, "proceeds" from which counsel fees may be secured have been identified from: a refund of contract moneys *(Gerzof v Sweeney,* 22 NY2d 297); money payments due on a client's assigned invoices *(Todd v Mutual Factors,* 3 AD2d 537, affd 4 NY2d 759); the equity of redemption to real property *(Robinson v Rogers,* 237 NY 467).

believes the tax debt produced by that arithmetic is excessive because his assessment is unequal or illegal, he may challenge its validity in certiorari proceedings and the order of the court, whether entered after trial or by way of settlement, constitutes an adjudication with respect to the validity and amount of the assessment. The litigation is defensive and unless a refund of past taxes paid is obtained the proceeding does not create any proceeds. It avoids payment of a future invalid charge in precisely the same fashion that a declaration of the invalidity of a mortgage *(Matter of Snitow v Jackson, supra)*, or reconnection charge *(Kovarsky v Brooklyn Union Gas Co., supra)* voids an illegal debt, or the defense of a title preserves or enhances existing values *(Ekelman v Marano,* 251 NY 173; *Morey v Schuster,* 159 App Div 602, affd 217 NY 639, rearg den 217 NY 700; and see *Matter of Desmond v Socha, supra)*. If a lien is to be declared upon a client's assets in this case, we see no impediment to asserting one against the client after the successful defense of any action in which an adverse judgment might affect a defendant's general assets.

Petitioner points out that the assessment reduction in one year exceeded that in the other two years and it contends that the procedure was followed for the town's benefit, to avoid a refund for past taxes paid. We have no reason to doubt that such was the fact. Nevertheless, the result is the same and no proceeds of the litigation can be identified upon which a lien may be fixed.

The order and judgment should be affirmed.

CARDAMONE, J. (dissenting). Petitioners are attorneys who claim an attorney's charging lien for legal services rendered in obtaining a tax assessment reduction for 4000 East River Road Associates who were tenants in possession of real property owned by ICM Realty. The tax certiorari proceedings instituted by petitioners against the Town of Henrietta in Monroe County resulted in a substantial reduction in assessment and tax savings for the three tax years—1975-1977—of over $200,000. Of these funds petitioners claim under the retainer with 4000 East River Road, one third as their fee from ICM Realty who have since resumed control of their premises.

The attorney's charging lien is the creature of statute (Judiciary Law, § 475). The statute being remedial in nature— it not only defined the charging lien that attorneys have always had under common-law principles, it enlarged it—must

be liberally construed *(Robinson v Rogers,* 237 NY 467, 471). The statute provides that "[f]rom the commencement of an action * * * in any court or before any state, municipal or federal department * * * the attorney who appears for a party has a lien upon his client's cause of action * * * which attaches to a verdict, report, determination * * * in his client's favor, and the proceeds thereof in whatever hands they may come * * * The court upon the petition of the client or attorney may determine and enforce the lien." (Judiciary Law, § 475.)

The question here is whether the attorneys' efforts resulted in a lien upon their client's claim which attached to a determination in their client's favor and the "proceeds thereof in whatever hands they may come". Proceeds, of course, are not required to be cash in hand. An attorney's charging lien may attach to such an uncertain and speculative interest as his client's possessory interest in the equity of redemption *(Robinson v Rogers, supra,* pp 473-474). Concededly a section 475 lien cannot be enforced against real property as stated in *Matter of Ely* (79 Misc 118) upon which Special Term relies (see, also, *Matter of Desmond v Socha,* 38 AD2d 22, affd 31 NY2d 687). However, appellant urges with considerable persuasiveness that the charging lien attaches to the tax savings themselves and seeks enforcement of the lien against the gross revenues of the property to the extent that such revenues, which would have been allocated to taxes but for the reduction achieved by appellants, were freed to be applied to other uses *(Continental Bank & Trust Co. of N. Y. v Wohlbro Constr.,* 256 App Div 992). Clearly the benefit of assessment reduction was a specific and definite amount. Over a three-year period from 1974 to 1977 the real estate tax savings amounted to $212,172.56. The tax assessment reduction thus had a definable and ascertainable present value under modern well-settled principles of accounting.

Unquestionably, under the clear direction of the statute, this saving or benefit to the client may be attached "in whatever hands they may come," even, as here, into hands of those other than clients of the charging lien attorney. As stated in *Fischer-Hansen v Brooklyn Hgts. R. R. Co.* (173 NY 492, 501-502) the lien "clings to any property or money into which the subject can be traced, until it reaches the hands of a *bona fide* purchaser" (see, also, *Todd v Mutual Factors,* 3

AD2d 537, affd 4 NY2d 759; *People ex rel. New York Trust Co. v Sexton,* 176 Misc 761).

With respect to the equities and, of course, what is being adjudicated here is an equitable claim, the facts reveal that the owner had actual, not merely constructive, knowledge of the retainer agreements and of the benefits obtained. Clearly the owner may not be characterized as one similar to a bona fide purchaser. Further, no good reason has been advanced as to why the owner should be entitled to the benefit of an economic windfall obtained solely through the professional efforts of the attorneys seeking to enforce the charging lien. Thus, the respondent owner should, in my view, be equitably estopped from denying its possession of these tax-savings proceeds *(Elwell v Chamberlin,* 31 NY 611, 619).

Accordingly, I vote to reverse and grant the petition which seeks an attorney's charging lien.

MARSH, P. J., SIMONS, DILLON and SCHNEPP, JJ., concur in *Per Curiam* opinion; CARDAMONE, J., dissents and votes to reverse the order and judgment and grant the petition in an opinion.

Order and judgment affirmed, without costs.