OPINION OF THE COURT
Martin Schoenfeld, J.
In this matrimonial action plaintiff wife Loma J. Renner now moves, essentially, (1) to hold defendant husband Marc Blatte in contempt of court, pursuant to Judiciary Law § 753, for violating an interim restraining order dated December 13, 1994, and entered March 14, 1995 (the restraining order); (2) for a qualified domestic relations order (QDRO) directing the Jump Start Music, Inc. profit-sharing plan (the Plan) to transfer to a "rollover IRA” for plaintiff the sum of $119,425, chargeable against defendant’s interest in the Plan; (3) to vacate defendant’s March 19, 1996 note of issue; and (4) for $10,000 counsel fees for bringing the instant "enforcement application”.
The parties have been married approximately 20 years and have one child, Hayley Blatte, approximately 10 years old. Defendant has been living separately from plaintiff and Hayley since approximately February of 1994.
In an order dated November 20, 1995 and entered November 24, 1995 (the support order), Justice David B. Saxe of this court directed defendant to pay to plaintiff $425 per week maintenance and $250 per week child support, with retroactive sums payable "at the additional rate of $325 per week”, plus carrying charges on the marital residence (where plaintiff and Hayley live), health insurance, Hayley’s tuition, etc.
Plaintiff alleges, and defendant does not deny, that defendant has only been paying plaintiff $500 per month; that as of March 29, 1996 defendant’s direct interim maintenance and child support payments were $20,825 in arrears and defendant’s interim third-party payments were an additional $7,600 in arrears; that defendant has completely failed to comply with the support order’s award of $10,000 in counsel fees to plaintiff; that defendant owes an additional $1,500 in counsel fees awarded upon an application for payment of the $10,000; that defendant owes an additional $3,500 for counsel fees incurred in making a motion to hold defendant in contempt for violating the restraining order by removing $15,000 from an IRA in his name (it is not clear whether the $15,000 has been returned) (total counsel fees owed: $15,000); and that according *581 to defendant’s statement of net worth, dated January 25, 1995, the Plan contains $204,000, all of which plaintiff considers marital property subject to equitable distribution. (In a "Supplemental Affirmation in Support of Motion” plaintiff s counsel indicates that defendant has ceased paying the carrying charges on the marital apartment.)
In her moving affidavit (para 5), plaintiff also alleges "[i]n or about November 1995 [defendant], on behalf of his [apparently wholly owned] business, Jump Start Music, Inc., obtained a $50,000 loan from Chase Bank, and assigned his life insurance policy, of which I am the beneficiary, as collateral therefor”.
Defendant states that given the decline in defendant’s advertising-jingle-based income over the last few years, the support order awarded plaintiff too much money. Defendant claims, in his opposing affidavit (para 33), that his "1996 income is likely to be less than $50,000”, but he understands (i.e., concedes) that he cannot, at this point, seek to reargue or appeal the support order.
Discussion
Contempt
In her moving affidavit (para 26), plaintiff states that defendant recently violated the restraining order by "obtaining a business loan and using his life insurance as collateral therefor”. Similarly, plaintiffs counsel states in her moving affirmation (para 9) that "the Wife has advised us that the Husband has pledged his life insurance policy, of which she is the beneficiary, as collateral for a bank loan to his business”.
The restraining order provides, in part, that defendant is "restrained from * * * encumbering * * * any and all marital assets * * * except in the ordinary course of business [and to pay] for everyday living expenses”. A "bank loan to [a] business” would appear to be something done "in the ordinary course of business”. No citation is necessary for the proposition that businesses borrow money all the time, with the personal assets of the businesses’ principals frequently used as the security therefor. Thus it appears that plaintiff has failed to make a prima facie case of a contempt by defendant. However, the request to hold defendant in contempt is denied without, prejudice pending trial, where plaintiff may attempt to show that the proceeds of the loan were not used in good faith to further defendant’s business.
*582 QDRO
QDROs are the subject of provisions in the Internal Revenue Code (IRC) and in the Employee Retirement Income Security Act (ERISA). As here relevant,
"(1) In general. (A) Qualified domestic relations order. The term 'qualified domestic relations order’ means a domestic relations order—
"(i) which creates or recognizes the existence of an alternate payee’s right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and * * *
"(B) Domestic relations order. The term 'domestic relations order’ means any judgment, decree, or order * * * which—
"(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child [etc.], and
"(ii) is made pursuant to a State domestic relations law”. (IRC [26 USC] § 414 [p] [1]; accord, 29 USC § 1056 [d] [3] [B] [ERISA].)
An "alternate payee” is defined as "any spouse, former spouse, child [etc.] of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.” (IRC [26 USC] § 414 [p] [8]; 29 USC § 1056 [d] [3] [K] [ERISA].) Furthermore, a "profit-sharing” plan may be the subject of a QDRO. (IRC [26 USC] § 401 [a].) In New York State, CPLR 5205 (c) (4) provides, essentially, that the trust exemption from enforcement of judgments "shall not impair any rights an individual has under a qualified domestic relations order as that term is defined in section 414 (p) of the United States Internal Revenue Code”.
It has specifically been held that "defaults in post-matrimonial judgment support and maintenance obligations may be enforced by way of [QDROs] against pension fund accounts” (Pamela F. v Ralph P. F., Sup Ct, Onondaga County, 28 Fam L Rev 21, No. 2 [1996] [emphasis added]); that as held in Keegan v Keegan (204 AD2d 606 [2d Dept 1994]), a postdivorce judgment case, QDROs may be used to effectuate orders under CPLR 5241 ("Income execution for support enforcement”) and 5242 ("Income deduction order for support enforcement”); that QDROs are proper "to aid enforcement of * * * money judgments for attorneys’ fees incurred in * * * attempts to compel * * * compliance with * * * child support obliga *583 tions contained in a settlement agreement incorporated but not merged into [a final] divorce judgment” (Adler v Adler, 224 AD2d 282 [1st Dept 1996]); and that a QDRO is a proper method to obtain postdivorce child support arrears from a pension plan even though the children at issue have become emancipated (Bumstead v Raisbeck, 230 AD2d 759).
While this court is not aware of any cases that have either imposed or refused to impose predivorce judgment QDROs, the statutory language quoted above clearly provides that a "spouse”, as well as a "former spouse”, may be the beneficiary of a QDRO. Furthermore, while the imposition of a predivorce judgment QDRO may trigger negative tax implications, this is no reason to allow a spouse with a pension or profit-sharing plan to escape his or her obligations, or to allow a spouse without such financial security to starve or to be rendered homeless.
In the instant case, there is further factual support for the imposition of a QDRO. In his affirmation in opposition (paras 34-35), defendant states that pending trial, or a selling of the marital residence:
"I suppose it is inevitable that [plaintiff] and I look to the Plan to provide money to provide for our living expenses * * *
"I have no fundamental objection to [plaintiff] receiving some money from the Plan at this time * * * I would not object to Lorna receiving an amount equal to arrearages of temporary child support and temporary maintenance.”
Finally, the Plan itself, section 9 (2), states that "some portion or all of a Participant’s Account may be distributed to someone other than the Participant if the Trustee is ordered to do so by a Qualified Domestic Relations Order”. (Section 11 [3] of the Plan informs participants of what a QDRO is, in language reflecting the IRC and ERISA.)
After careful consideration, and in the apparent absence of any prior cases directly on point, we find that the instant plaintiff, a "spouse” as contemplated by the IRC and ERISA, is entitled to a QDRO.
Plaintiff seeks a QDRO in the amount of $119,425 as follows: $20,825 for direct maintenance and child support payment arrears; $7,600 for third-party payment arrears; $15,000 in counsel fee arrears (all of which "relate” to the provision of child support and maintenance); $25,000 "as and for security to ensure future payments of direct and indirect interim child *584 support and maintenance”; $10,000 "for counsel fees incurred and to be incurred in connection with this application”; and $41,000 "for the aggregate income taxes I will have to pay upon the withdrawal of such pension funds”. (See, plaintiffs moving affidavit para 17; tax computations annexed thereto as exhibit T.)
Considering the QDRO provisions and the case law cited above, and the facts of this case, and although some items are close and the conclusions with respect thereto are not entirely free from doubt, this court finds that these items all relate to maintenance and child support and that, therefore, plaintiff is entitled to include in the QDRO to be issued in connection herewith the $20,825 in direct maintenance and child support payment arrears; the $7,600 for third-party payment arrears; the $15,000 in counsel fee arrears; $5,000 in counsel fees awarded in connection with the instant application (infra); the $41,000 for income taxes plaintiff will have to pay upon the withdrawal of the funds, as computed in exhibit T and not refuted by defendant; $20,000 as security for future payments and/or as additional arrears to date.
Finally, as the money to be transferred from the Plan by the QDRO is in satisfaction of defendant’s obligations, such sums shall be charged solely against defendant’s interest in the Plan.
Note of Issue
Defendant’s note of issue states that discovery has been "waived”. It is uncontested that defendant has not been deposed. Plaintiff states that she also needs to make an appraisal of Jump Start Music, Inc. Thus discovery does not appear to have been "waived” and the note of issue is hereby vacated.
Counsel Fees
"DRL [§] 238 conveys authority to the courts to award counsel fees, as a matter of discretion, for legal services rendered in the prosecution or defense of efforts to enforce certain financial provisions of matrimonial orders and judgments.” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 238, at 572.) Plaintiff is hereby awarded, in the court’s discretion, $5,000, based, in part, upon the assertions in counsel’s affirmation of April 3, 1996.
*585 Conclusion
Thus for the reasons set forth herein, plaintiffs request to hold defendant in contempt for allegedly violating the interim restraining order of December 13, 1994 is denied without prejudice; plaintiffs request for a QDRO is granted to the extent set forth above, and the proposed QDRO submitted as exhibit V to plaintiffs moving affidavit has now been signed in accordance with today’s decision; plaintiffs request that the sums transferred pursuant to the QDRO be charged against defendant’s interest in the Jump Start Music, Inc. profit-sharing plan is granted; plaintiffs request that defendant’s note of issue be vacated is granted, and the clerk is hereby directed to strike the note of issue; and plaintiffs request for counsel fees "in connection with this enforcement application” is granted to the extent of awarding plaintiff’s counsel $5,000 in fees, which amount is included in the QDRO as set forth above.