■ CITY OF TROY, Respondent-Appellant, v CAPITAL DISTRICT SPORTS, INC., Doing Business as ALBANY RIVER RATS, et al., Defendants, and CRANE, GREENE & PARENTE, P.C., Appellant-Respondent. [759 NYS2d 795] —Mercure, J. Cross appeals from an order of the Supreme Court (Ceresia, Jr., J.), entered August 28, 2002 in Rensselaer County, which, inter alia, denied a motion by Crane, Greene & Parente, P.C. to enforce a charging lien for counsel fees.

Pursuant to Judiciary Law § 475, Crane, Greene & Parente, P.C. (hereinafter the firm) seeks counsel fees in connection with the underlying action, which it commenced on behalf of plaintiff to recover funds or reduce plaintiff's indebtedness resulting from various financial transactions. Plaintiff entered into those transactions to fund loans made in 1990 to defendant Capital District Sports, Inc. (hereinafter CDS) for the acquisition of territorial rights to an American Hockey League franchise and construction of an arena in the City of Troy, Rensselaer County. The transactions included the sale of certificates of participation to Massachusetts Financial Services (hereinafter MFS) in the amount of approximately $5 million. After questions arose in 1995 regarding the constitutionality of the financing scheme, plaintiff retained the firm to act "as special counsel to pursue all legal remedies available to [plaintiff] with respect to said financial scheme." Pursuant to plaintiff's resolution authorizing these services, the firm was to be paid "at a rate not to exceed * * * ($100.00) per hour or * * * (20%) of any recovery, whichever is larger."

The firm commenced an action against, among others, MFS and CDS. It alleged that, through its efforts, plaintiff achieved a $1.5 million reduction in its debt to MFS and, thereafter, the action was discontinued as to MFS. The firm also recovered $345,000 from CDS and Joel Moser, plaintiff's bond counsel at the time of issuance of the certificates of participation. For its work in this action, the firm was paid counsel fees of $214,836.74. The firm contends, however, that pursuant to the resolution retaining it and Judiciary Law § 475, it is entitled to enforce a lien upon 20% of the $1,845,000 "recovery" realized by plaintiff as a result of the settlement of the underlying action, amounting to an additional $154,163.26 in counsel fees beyond that already paid by plaintiff. Supreme Court disagreed and denied the firm's motion to enforce its charging lien, resulting in this appeal.*

Judiciary Law § 475, provides, in pertinent part, that "the

---

* Plaintiff cross-appeals from Supreme Court's order, which also denied its cross application to recover excess counsel fees paid in 1998 when the Moser

attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, *and the proceeds thereof* in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination" (emphasis added). While this statutory charging lien comes into existence upon commencement of an action or proceeding (*see LMWT Realty Corp. v Davis Agency,* 85 NY2d 462, 467 [1995]), the lien attaches only when proceeds in an identifiable fund are created by the attorney's efforts in that action or proceeding (*see Banque Indosuez v Sopwith Holdings Corp.,* 98 NY2d 34, 43-44 [2002]; *Matter of Heinsheimer,* 214 NY 361, 364-365 [1915]). Thus, for example, no lien is available when the litigation results merely in "a measurable saving of taxes" due to avoidance of "payment of a future invalid charge" (*Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc.,* 64 AD2d 484, 488-489 [1978], *affd on op below* 48 NY2d 890 [1979]). To permit a lien under such circumstances "would result in unwarranted judicial legislation establishing a non-possessory attorney's lien encumbering a large portion of [the] client's general assets not identifiable with any specific litigation" (*id.* at 488). Similarly here, no lien can attach to the $1.5 million reduction in plaintiff's debt to MFS because the reduction did not produce proceeds in an identifiable fund.

It is uncontested, however, that the firm obtained $345,000 on behalf of plaintiff in the underlying litigation. Thus, if the terms of the parties' agreement—as memorialized in plaintiff's resolution to retain the firm—provide that the firm was to be compensated for achieving a debt reduction in the underlying litigation, it may seek payment for its services in that regard through a lien on the $345,000 (*see Neimark v Martin,* 7 AD2d 934, 935 [1959]; *cf. Matter of Heinsheimer, supra* at 364-365). The resolution indicates that "the citizens of Troy may have * * * lost as much as $1.5 [million], or more" through the structuring and financing transactions at issue in the underlying litigation and that "there exist[ed] a probability that [plaintiff might] be able to *recover some of that money*" (emphasis added). Plaintiff thus resolved to retain the firm "as special counsel to pursue *all legal remedies* available to [plaintiff] with respect to said financial scheme, and that [the]

---

settlement was reached. Plaintiff raises no arguments regarding the denial of its cross application and indicates that it cross-appealed solely to preserve its rights in the event of a remittal by this Court.

firm be paid at a rate not to exceed * * * ($100.00) per hour or * * * (20%) *of any recovery,* whichever is larger" (emphasis added).

We conclude that the resolution is ambiguous inasmuch as, on its face, it is susceptible to more than one meaning (*cf. Greenfield v Philles Records,* 98 NY2d 562, 569-570 [2002]; *Breed v Insurance Co. of N. Am.,* 46 NY2d 351, 355 [1978]). Specifically, the term "any recovery" may be read either as referring to a recovery in connection with any "legal remedy available to [plaintiff]" or to plaintiff's "recover[y of] some of that money" previously lost as a result of the financial transactions at issue in the underlying litigation. The contradictory evidence submitted by the parties in connection with this motion does not provide an adequate basis for us to determine whether the parties intended the term "any recovery" to include a reduction in debt. Thus, a question of fact exists and we must remit this matter for further factual inquiry (*see Barbarita v Shilling,* 111 AD2d 200, 202 [1985]; *see also Konik v Anesthesia Assoc. of Plattsburgh,* 128 AD2d 933, 934 [1987]; *Boulter Carting Co. v De Perno,* 72 AD2d 939, 939 [1979]; *cf. Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191 [1986]). Further, there is an issue of fact regarding whether the debt reduction was a product of the instant litigation or was achieved through the efforts of plaintiff's separate bond renegotiation team. Accordingly, the matter must be remitted for resolution of this issue as well.

Cardona, P.J., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.