OPINION OF THE COURT
Richard A. Dollinger, J.
In this matter, an attorney seeks to enforce a charging lien against his former client’s IRA, which was funded through a rollover of her marital share of the husband’s IRA. This application requires the court to determine if a charging lien under the broad language of section 475 of the Judiciary Law can be asserted against an IRA, which is otherwise exempt from creditors’ claims pursuant to CPLR 5205. The clash between these two statutory commands, with competing legislative policy objectives, appears to be an issue of first impression in New York.
The attorney represented the wife in a divorce action.[1] In the retainer agreement, the attorney noted that if fees were due and owing at the time of his discharge, the attorney had the right to seek a charging lien, which the agreement described as “a lien upon the property that was awarded to you as a result of equitable distribution in the final order or judgment in the case.” The client also signed a “statement of client’s rights and responsibilities’ ’ which stated that a court could give the attorney a charging lien which “entitled your attorney to payment for services already rendered at the end of the case out of the proceeds of the final order or judgment.” The retainer agreement further provided that if a dispute over fees arose, the client had a right to seek arbitration of the fee dispute. This right is triggered by the attorney sending a notice, and the client would have 30 days to seek binding arbitration of the contested fees.
After a trial of the divorce action, the referee directed that the husband’s IRA account was marital property subject to equitable distribution. When the coverture fraction was applied *902 under Majauskas v Majauskas,[2] the wife received 38.6% of the account which was to be distributed according to a qualified domestic relations order (QDRO). Pursuant to the judgment of divorce, the court later signed a QDRO which provided, in pertinent part:
“the plaintiffs (wife’s) share . . . shall be transferred to the plaintiff ... by way of a trustee to trustee transfer to an individual retirement account . . . this instrument is designed to satisfy, and this court deems it to satisfy, the definition of a qualified domestic relations order as that term is defined in Internal Revenue Code of 1986, the Retirement Equity Act of 1984 and the Retirement Income Security Act of 1974.”
The QDRO permitted a rollover of the wife’s marital share into an IRA in her name. While the total amount transferred pursuant to the QDRO is unknown, the wife, in May 2012, told her attorney that she had $72,000 still held in her IRA account.
At the end of the divorce, the wife and her attorney discussed paying the bill, but when all was said and done, she owed him $26,874.58, for which the attorney, in his application before this court, now seeks a charging lien.[3] The wife, in opposition, contests the amount of fees owed and whether either a retaining lien or a charging lien can be asserted against the IRA. The court heard oral argument and reserved decision subject to arbitration.[4] The amount of any fees is subject to arbitration. (22 NYCRR 137.0; Eiseman Levine Lehrhaupt & *903 Kakoyiannis, P.C. v Torino Jewelers, Ltd., 44 AD3d 581 [1st Dept 2007].) The retainer agreement required the attorney to give his client 30 days’ notice of her right to elect the arbitration process. There is no evidence before the court indicating that such notice was given. Therefore, the client’s right to seek arbitration still exists and the mandatory fee arbitration under the court rules should occur. (Mahler v Campagna, 60 AD3d 1009, 1011-1012 [2d Dept 2009] [fee arbitration in matrimonial case]; Louissaint v DePaolo, 2010 NY Slip Op 33138[U] [Sup Ct, Queens County 2010] [if no 30-day notice is given, the attorney may not recover a fee in a matrimonial matter].) However, the fee dispute does not preclude enforcement of the charging lien. (Moody v Sorokina, 50 AD3d 1522, 1523-1524 [4th Dept 2008].)
Several facts are pertinent to this court’s analysis. First, there is no evidence that the wife ever contested her attorney’s charges until after the judgment of divorce. Second, there is no allegation before the court that the wife ever agreed to pay the attorney’s fees specifically from the IRA account. Third, there is no evidence that the wife possesses any other assets, distributed under the divorce judgment, available to satisfy the charging lien. Finally, there is no allegation that the client, in the divorce judgment, engaged in any collusive or other improper behavior to thwart the attorney’s recovery of his fees.
Before reviewing the law in this matter, it is important to recognize several factors regarding the QDRO and the rollover of the IRA from the husband to the wife. First, there is no dispute that the wife’s account, created when her marital share was rolled over by the plan administrator, qualifies as an IRA under the Internal Revenue Code (IRC). (26 USC § 408 [a].) The wife, as the designated beneficiary, has an unforfeitable right to the balance held in the rolled-over IRA account.
Second, the rollover of the marital share from the husband’s IRA to the wife’s IRA was properly done by the QDRO, which “creates or recognizes the existence of an alternate payee’s right to . . . receive all or a portion of the benefits payable with respect to a participant under a plan.” (Duhamel v Duhamel, 4 AD3d 739, 740 [4th Dept 2004].) Pursuant to the QDRO, the transfer of funds occurs between trustees and the recipient does not, during the transfer, have access to, or outright ownership of, the trust funds. (See Boggs v Boggs, 520 US 833, 846 [1997] [a QDRO is a type of domestic relations order which creates or recognizes an alternate payee’s right to, or assigns to an alternate payee the right to, a portion of the benefits payable *904 with respect to a participant under a plan].) The QDRO in this case specifically refers to a “trustee-to-trustee” transfer of the IRA funds. The “trustee-to-trustee” rollover preserves the tax-free nature of the transaction. (Anonymous v Anonymous, 2001 WL 1622210, 2001 US Dist LEXIS 20928, 27 Empl Benefits Cas [BNA] 1293 [SD NY, Dec. 18, 2001, No. 01 CIV 8438 HB] [QDRO is a statutory exception to ERISA’s general bar on the assignment of plan benefits, and is a mechanism whereby a qualified individual, known as an “alternate payee,” can serve certain domestic relations orders on the administrator of another person’s plan without any immediate tax impact]; Cadet v Cadet, NYLJ, Dec. 11, 1996 at 31, col 6, 1996 NY Misc LEXIS 611, 216 NYLJ 113 [Sup Ct, Rockland County 1996] [a QDRO permits a rollover to be effected from defendant’s account to plaintiffs account in a manner which will result in a tax-free transaction]; see also Waggener v Waggener, 98 Haw 512, 51 P3d 379 [Haw Ct App 2002] [table; text at 2002 Haw App LEXIS 136, *8 (2002)] [all or any portion of the interest in a qualified plan that is awarded to a spouse by a QDRO may be rolled over tax free to an IRA or to another qualified plan, subject to the same rules that apply in the case of a distribution to a participant], citing Internal Revenue Code § 402 [c], [e] [1] [B]; Rodoni v Commissioner of Internal Revenue, 105 TC 29 [1995] [section 402 (a) (6) (F) of the code provides an exception to the general rule for certain rollovers by recipients of distributions made pursuant to a QDRO, if the recipient transfers, or rolls over, the distributed property into an IRA or other qualified plan].)
In order to preserve the tax-free rollover of these funds, the wife, while the beneficiary of the IRA account, is not the titled owner of the funds transferred into her IRA. (See Winter v Boskin, 181 AD2d 1000 [4th Dept 1992] [discussing the tax impact of certain rollovers]; Fleischmann v Fleischmann, 24 Misc 3d 1225[A], 2009 NY Slip Op 51614[U], *10 [Sup Ct, Westchester County 2009] [discussing tax and other questions relating to an IRA rollover, including that the IRA is “set up for the benefit of the (p)laintiff ’ and further that the plaintiff is not the titled owner of the funds].) Finally, any withdrawal from the wife’s IRA, after the rollover, does have tax impacts. Under the Internal Revenue Code, there are two types of withdrawals from IRAs — qualified and unqualified. When the account owner withdraws money from the IRA upon reaching a certain age or for specified purposes relating to retirement, the contributions, together with whatever amounts those contributions had *905 earned, are considered a “qualified withdrawal” and are taxed as part of gross income. (26 USC § 408 [d] [1]; Kitt v United States, 288 F3d 1355, 1356 [Fed Cir 2002]; Swanton v Commissioner of Internal Revenue, TC Memo 2010-140 at 3 [2010] [withdrawals from IRAs were taxed as part of gross income under section 72 of the Internal Revenue Code].) Congress also provided that an IRA account holder who makes an unqualified withdrawal from the account (i.e., before reaching the specified age or for a non-retirement related purpose) would find his taxable gross income increased by an amount equal to 10% of the portion of such amount. (26 USC § 72 [t];[5] Kitt v United States, 288 F3d at 1356; see generally Rousey v Jacoway, 544 US 320 [2005].[6]) Against this federally-painted landscape governing the rollover and taxation of IRAs, two New York statutes create a seeming conflict between the rights of IRA holders to be immune from the claims of creditors, and the rights of attorneys to protect earned fees.
In 1989 and 1994, the New York State Legislature, through amendments to CPLR 5205, clarified that IRAs were exempt from the claims of creditors. (Matter of Bank Leumi Trust Co. of N.Y. v Dime Sav. Bank of N.Y., 85 NY2d 925, 926 [1995] [under CPLR 5205 (c) (1) and (2) as amended in 1989, an individual retirement account created pursuant to 26 USC § 408 (d) (3), as a result of rollovers from either “a Keogh (HR-10), retirement or other (qualified section 401) plan established by a corporation” is exempt from a judgment creditor’s levy].) In Pauk v Pauk (232 AD2d 392 [2d Dept 1996]), the Second Department reviewed this legislative design:
“Effective September 1, 1994, CPLR 5205 (c) (2) was amended to include IRAs as accounts that are ‘conclusively presumed to be spendthrift trusts’ under CPLR 5205 (c) (3), and exempt from attachment to enforce a money judgment except in certain *906 circumstances not relevant here. Prior to this amendment only those IRAs which were created as a result of ‘rollovers’ from an exempt trust or pension plan qualified as exempt, whereas IRAs established by funds traceable to the judgment debtor were not protected. A review of the legislative history of the 1994 amendment establishes that its purpose was to exempt ‘IRAs from the application of money judgments which will provide protection to individuals who establish IRA accounts for their retirement’ (Mem of Sen Volker, ch 127, 1994 Legis Ann, at 73). The Office of Court Administration likewise notes that the amendment exempts ‘any trust’ qualifying as an Internal Revenue Code § 408 IRA (Mem of Off of Ct Admin, 1994 McKinney’s Session Laws of NY, at 3278).” (Id. at 393 [some citations omitted].)
The amended CPLR exemption expressly applies to “rollovers” from IRAs.[7] (CPLR 5205 [c] [2] [exemption applies to funds “qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, or created as a result of rollovers from such plans”]; Lauder v Jacobs, 10 Misc 3d 1052[A], 2005 NY Slip Op 51882[U] [Sur Ct, Westchester County 2005] [IRAs are exempt if derived from a rollover of otherwise exempt pension funds].)[8] In an attempt to rebut this legislative command, the attorney in this case cites several cases that suggest that IRAs are subject to creditor claims. (Long Is. Jewish Hillside Med. Ctr. v Prendergast, 134 Misc 2d 93 [Sup Ct, Queens County 1986]; Matter of Abrahams v New York State Tax Commn., 131 Misc 2d 594 [Sup Ct, Westchester County 1986]; Helmsley-Spear, Inc. v Winter, 74 AD2d 195 [1st Dept 1980].) However, these cases predate the 1994 amendments to the CPLR and the court no longer considers them as having any precedential value on this subject.
Against this seemingly insurmountable federal taxation of IRAs and the limitation on withdrawals and direct state command regarding the immunity granted to IRAs from creditor’s claims, this court finds another compelling statutory command *907 in section 475 of the Judiciary Law which contains broad language regarding the extent of an attorney’s charging lien: “the attorney who appears for a party has a lien upon his or her client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client’s favor, and the proceeds thereof in whatever hands they may come” (emphasis added). This unequivocal language clearly suggests that the legislature intended that attorneys seeking to be paid could reach funds held by third parties. At first blush, the broad language strongly suggests that the mere fact that the IRA is held in trust for the wife does not prevent the assertion of a charging lien against it and also suggests any tax complications, caused to the wife if the lien is paid from trust funds, are not a justification to deny the lien.
A brief review of the elements of a charging lien under section 475 of the Judiciary Law supports this broad reading of the statute’s reach and the legislature’s use of the words “in whatever hands they may come.” A charging lien automatically comes into existence, without notice or filing, upon commencement of the action, and is measured by the reasonable value of the attorney’s services in the action, unless fixed by agreement. (N.K. v M.K., 19 Misc 3d 1124[A], 2008 NY Slip Op 50837[U], *7 [Sup Ct, Kings County 2008]; Resnick v Resnick, 24 AD3d 238, 239 [1st Dept 2005]; see also Theroux v Theroux, 145 AD2d 625 [2d Dept 1988].) The charging lien creates an “equitable ownership interest” in the client’s cause of action. (Chadbourne & Parke, LLP v AB Recur Finans, 18 AD3d 222, 223 [1st Dept 2005], cited in Dominguez v Zinnar, 2012 NY Slip Op 30138[U] [Sup Ct, NY County 2012].) The Court of Appeals has concluded that because a cause of action is a species of property, the attorney can acquire a vested property interest — an “equitable ownership interest” — which cannot subsequently be disturbed by the client or anyone claiming through or against the client. (LMWT Realty Corp. v Davis Agency, 85 NY2d 462, 467 [1995]; Matter of Lubin, 213 NYS2d 143, 147 [Sup Ct, Kings County 1961] [the “lien of an attorney attaches from the time of the commencement of the action and not the time of the presentment of a notice of claim to an alleged debtor”]; Resnick v Resnick, 24 AD3d 238 [1st Dept 2005].) “Manifestly, then, an attorney’s charging lien is something more than a mere claim against either property or proceeds; an attorney’s charging lien is a vested property right created by law and not a priority of *908 payment.” (LMWT Realty Corp. v Davis Agency at 467-468 [internal quotation marks omitted].) There are three prerequisites to the creation of a charging lien, as a result of the attorney’s efforts: (1) the client must assert a claim, (2) which results in proceeds, (3) payable to or for the benefit of the client. (Batista v KLS-Kachroo Legal Servs., P.C., 2012 NY Slip Op 32016[U], *6 [Sup Ct, NY County 2012]; City of Troy v Capital Dist. Sports, 305 AD2d 715, 716 [3d Dept 2003] [the attorney’s charging lien “attaches only when proceeds in an identifiable fund are created by the attorney’s efforts in that action or proceeding”]; Tunick v Shaw, 6 Misc 3d 1014[A], 2004 NY Slip Op 51787[U], *7 [Sup Ct, NY County 2004]; Moody v Sorokina, 50 AD3d 1522 [4th Dept 2008]; Theroux v Theroux, 145 AD2d 625 [2d Dept 1988].) In a matrimonial action, a charging lien is available only to the extent that an equitable distribution award reflects the creation of a new fund by an attorney greater than the value of the interests already held by the client. (Noble v Noble, 2011 NY Slip Op 30835[U] [Sup Ct, Albany County 2011]; Resnick v Resnick, 24 AD3d 238 [2005].) Importantly, the Court of Appeals has repeatedly recognized the sweeping reach of a charging lien under section 475. In Matter of Cohen v Grainger, Tesoriero & Bell (81 NY2d 655, 658 [1993]), the Court intoned that the lien, as drafted by the legislature, reflected the intention to protect attorney claims for fees: “the lien is imposed on the cause of the action and . . . the proceeds, wherever found, are subject to it.” A century of Court of Appeals holdings affirm this wide dimension of the charging lien, even in its earlier statutory iteration:
“the general rule is that a lien upon property attaches to whatever the property is converted into and is not destroyed by changing the nature of the subject. ... It follows its subject and cannot be shaken off by a change of form or substance. It clings to any property or money into which the subject can be traced” (Fischer-Hansen v Brooklyn Hgts. R.R. Co., 173 NY 492, 501 [1903], cited by Tunick v Shaw, 45 AD3d 145, 148-149 [1st Dept 2007]).
While Fischer-Hansen v Brooklyn Hgts. R.R. Co. interpreted the earlier version of the Code of Civil Procedure, it noted that the phrase “proceeds thereof in whosoever hands they may come” was added by the legislature in 1879. (Id. at 497.) The Court concluded that the statute was remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving *909 them a lien upon the subject of the action. (Fischer-Hansen v Brooklyn Hgts. R.R. Co. at 499.)
In his argument before this court, the attorney repeatedly notes that in addition to the expansive sweep of the language in section 475, the charging lien is “equitable in character.” He cites two century-old cases, both of which cite a predecessor statute of the current charging lien statute.[9] These cases, which have contemporary counterparts, simply suggest the court must consider all the facts and circumstances in a case before enforcing the lien. One case, cited by the attorney, does provide an instance in which a court enforced a charging lien against an otherwise exempt IRA. In Memmo v Perez (63 AD3d 472 [1st Dept 2009]), the husband stipulated to a charging lien against the husband’s share of any equitable distribution. The Court held the stipulation could be enforced against the husband’s IRA funds which were transferred to him as part of the divorce settlement. Because the husband stipulated to it, the Court held that CPLR 5205 (c) (2), which otherwise exempted the rollover of retirement accounts, could not be asserted as a defense to the charging lien. The appeals court noted that the settlement agreement left the husband with virtually no “liquid assets [with which] to defray” the lien and the lower court had “providently exercised its discretion to look behind th[e] settlement.” The Appellate Division enforced the lien. (Id. at 473.) The Court also noted that the transfer of IRA accounts occurred within 90 days of the husband’s stipulation to the lien, which further rendered the funds subject to the lien. (CPLR 5205 [c] [5] [i].)
The facts easily distinguish Memmo v Perez from this case. Here, there is no evidence that the wife colluded to isolate the IRA funds and thwart the attorney’s claims for fees. There is no evidence of a stipulated charging lien. The attorney only sought the charging lien in July 2012, more than eight months after the QDRO was signed and entered in the Monroe County Clerk’s Office. Given these facts, the attorney’s charging lien, even if granted by the court, would not fall under the exception in *910 CPLR 5205 (c) (5) (ii). In Memmo v Perez, the Court did not discuss any of the tax implications to the husband if the law firm were able to collect its lien from the IRA, never considered whether the withdrawal would be qualified under the IRC, and did not discuss whether the withdrawal could be accomplished by a further QDRO to minimize the tax impact. In fact, in Memmo v Perez the Court declined to consider the central question which is at the heart of this matter: whether the transfer of the marital share of retirement funds from one spouse to another creates a “new fund greater than the value of interests already held by [the transferee spouse].” (Id. at 472 [internal quotation marks omitted].)[10] The husband in Memmo v Perez argued that despite the stipulation, the transfers of the IRA funds did not create a “new fund” because he already held a marital share of his wife’s IRA and transfer from one IRA to another did not create a “new fund” greater than the value of the interests already held by the husband. The Court, faced with a stipulated lien and for equitable reasons that emerged later in the course of the opinion, declined to even consider that argument.
Based on extensive research, there is no other New York precedent on the question of whether a judgment of divorce that awards a party their equitable share of tax-sheltered retirement funds qualifies as the “distribution of some proceeds” or “a new fund” under the charging lien statute. The majority of precedents on this question hold that, for want of a better term, some “available cash proceeds” must be created in order to provide a corpus to satisfy the lien. (See e.g. Moody v Sorokina, 50 AD3d 1522 [4th Dept 2008] [conversion of a marital interest in a vehicle into a solely-titled interest in the vehicle represents “proceeds” under the lien statute].)[11] If “available cash proceeds” are a prerequisite to satisfy the lien, the mere fact that the funds are held in trust for the wife — as exists in this case — does not appear to defeat the assertion of the lien because the statute expressly permits the lien to reach funds held by a third party. (See Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc., 64 AD2d 484 [4th Dept 1978] [to enforce *911 the lien, the court may trace “proceeds” into the hands of a third person].)[12] In Noble v Noble, the court held that the transfer of an interest in a home, held by the wife as a tenant by the entirety with her husband, created “proceeds” under the Judiciary Law. The logic of the court in reviewing the question of the wife’s interest in the house is illustrative for resolving the “proceeds” question as it applies to the IRA rollover in this case. In Noble v Noble, the wife, through the transfer and sale of her marital interest in the marital residence, received cash proceeds, even though she was simply converting her marital share into cash. The court held that the charging lien could be asserted against those proceeds.
On the basis of these precedents, this court faces the question that the First Department declined to consider in Memmo v Perez: whether the distribution of the IRA through a QDRO constitutes creation of “new fund” or “proceeds” under the lien statute. Under equitable distribution in the Domestic Relations Law, the wife had a statutory “marital share” of the husband’s IRA. As a matter of law, the wife’s marital share existed at the time of the commencement of the action, even though the IRA, in which her share was held, was titled solely in her husband’s name. When the court, through the QDRO, rolled over the IRA, it did not create “proceeds” for the wife. It simply, as a matter of law, transferred her marital share from a trust, in which her husband was the beneficial owner and she held a marital interest, into a trust in which she was the beneficial owner. As noted above, the wife never had access to “available cash proceeds” as the wife had access to in Noble v Noble. Thus, in this court’s view, the tax-free rollover of the IRA through the QDRO does *912 not create “proceeds” or “a new fund” within the meaning of that term under prior judicial interpretations of section 475 of the Judiciary Law.
The court reaches this conclusion well aware that the Judiciary Law gives this court the power to trace the IRA funds to the wife, even though held by a third party in trust for her and despite the repeated incantations from the Court of Appeals to protect the attorney’s charging lien. In fashioning the exemptions for IRAs under CPLR 5205, the legislature wanted to preserve the integrity of retirement funds and IRA rollovers from all creditors. If the legislature had intended to allow attorney charging liens, however meritorious, to be an exception to that blanket rule, the legislature would have easily created that exception. Having made no mention of the charging lien exception to CPLR 5205, this court declines to countenance one by judicial interpretation. In addition, the New York courts have held that the charging lien does not attach to family support provisions in matrimonial settlements. A charging lien does not attach to an award of maintenance. (Rosen v Rosen, 97 AD2d 837 [2d Dept 1983].) Child support is also immune from a charging lien. (Haser v Haser, 271 AD2d 253 [1st Dept 2000].) There is no suggestion in the Domestic Relations Law that an attorney has a charging lien on the marital interests in tax-sheltered retirement accounts. Section 237 of the Domestic Relations Law permits attorneys to maintain an action for fees against either spouse, but makes no mention of any charging liens or their use against IRAs. The absence of statutory guidance in the Domestic Relations Law, which governs fees chargeable in matrimonial actions, is some evidence that the legislature did not intend the charging lien to interfere with court-ordered transfers of retirement accounts. Finally, this court declines to credit the attorney’s argument and read the retainer agreement as constituting a waiver of the wife’s right to object to the charging lien against her IRA. The retainer agreement merely mentions that the attorney may “seek a charging lien” against property awarded under equitable distribution, but nowhere in the agreement does the wife consent to a charging lien against her otherwise exempt property.
Before concluding, the attorney in this case does not request the issuance of a QDRO for his fees, although, as a practical matter, by seeking to enforce the lien against the IRA, he seeks its practical equivalent. The New York courts have granted spouses QDROs for legal fees awarded to the spouse. (Adler v *913 Adler, 224 AD2d 282 [1st Dept 1996]; Renner v Blade, 170 Misc 2d 579, 583 [Sup Ct, NY County 1996] [including attorneys fees in the QDRO and adding that, as between spouses, while a “QDRO may trigger negative tax implications, this is no reason to allow a spouse with a pension or profit-sharing plan to escape his or her obligations”]; AB v GH, 31 Misc 3d 945, 948 [Sup Ct, NY County 2011].) The Supreme Judicial Court in Massachusetts authorized a QDRO to permit one spouse to claim attorney’s fees from another spouse’s ERISA-protected retirement accounts. (Silverman v Spiro, 438 Mass 725, 784 NE2d 1 [2003].) Two facts easily distinguish these cases from the matter at hand. First, the QDRO was based on an award of fees to one spouse from the other, unlike here, where the attorney is seeking fees from his former client. Second, in the cited cases, the party seeking the QDRO was an “alternate payee.” Pursuant to the QDRO exception to ERISA’s spendthrift provision, only an “alternate payee” may be the beneficiary of a QDRO. (29 USC § 1056 [d] [3] [B] [i] [I].) The term “alternate payee” is defined as “any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.” (Id. at § 1056 [d] [3] [K].) Here, the intended beneficiary of any requested charging lien-related QDRO would be the attorney, who does not qualify as an “alternate payee” and hence the QDRO would be illegal under ERISA. (See also AT&T Mgt. Pension Plan v Tucker, 902 F Supp 1168 [CD Cal 1995] [orders for attorneys’ fees are not QDROs and constitute a prohibited assignment or alienation of moneys held by the plan and its trust to provide pension benefits to its participants and beneficiaries].)
In reaching this conclusion, this court declines to read the phrase in the Judiciary Law that permits the charging lien to be pursued into “whatever hands they may come” to contravene the federal taxation treatment, ERISA protection, and state exemption scheme which inheres in IRAs. As a matter of state law, reading the Judiciary Law to create a lien against the IRA rollover would elevate the attorney’s claims for fees over all other creditors, secured or otherwise, and give him a right unknown to any other creditor under the CPLR. The court, in resolving the conflict between the language of the CPLR and *914 the Judiciary Law, sides with more recent changes to the CPLR, enacted after the creation of IRAs under federal law.[13]
Granting the lien would also be inequitable in this court’s view. If the lien were recognized, then the attorney could, without the wife’s consent, withdraw funds from the IRA, or presumably, the attorney could require the wife to withdraw funds to satisfy the lien. There is no federal exemption which permits a nonparty to withdraw funds from the IRA. The withdrawal would be considered an unqualified withdrawal, which would require the wife to pay tax on the withdrawal and the 10% penalty as well. In this case, in order to pay the attorney the entire amount of his fees — $26,874.58—the wife, assuming a modest 15% overall tax bracket, would need to withdraw more than $4,031 to pay the income taxes and $2,687 to pay the 10% penalty, resulting in a total tax payment of $6,718 and a total withdrawal of $33,592 from the IRA. In short, the attorney, to collect his lien, would punish the wife by having her pay 25% in additional taxes on his fees. This court declines to authorize any such penalty, under the guise of granting her former attorney a charging lien against the IRA.
This court is not without sympathy for the attorney in this case, who may experience substantial difficulty in recovering any fees, even after arbitration. The funds transferred to the wife’s IRA represent the last available corpus of funds from the marital dissolution to satisfy the attorney’s fees. In considering the attorney’s request, the question arises of whether the court would enforce a charging lien if it had been asserted earlier, for example, prior to the IRA rollover and the filing of the QDRO. The New York courts have frowned on delay by attorneys in asserting charging liens. (Kaplan v Reuss, 113 AD2d 184 [2d Dept 1985], affd 68 NY2d 693 [1986] [failing to timely assert the charging lien within a reasonable time after it attached].) In this case, the attorney delayed seeking the charging lien until after completion of the divorce and well after the IRA rollover. But even if the attorney had asserted the lien prior to the entry of the QDRO, this court, in view of the policy reasons articulated *915 above and the statutory restrictions, would be equally skeptical of allowing the attorney to “intercept” the IRA funds prior to their rollover into the wife’s account. Despite all of these policy considerations, this court does not rule out a circumstance in which an attorney obtains his client’s consent for a charging lien — such as the stipulated lien which was featured in Memmo v Perez. Even then this court would most likely require extensive disclosure by the attorney about the federal income and tax penalties to his client before concluding that the client had consented to withdraw funds from the IRA to compensate their counsel. And, even if such disclosure occurred, this court would have great difficulty in concluding that the client voluntarily consented to enforcement of the lien from IRA funds, when paying the attorney would involve a substantial tax penalty to the client.
Under these circumstances, the federal tax consequences on any withdrawal, the penalty imposed when an unqualified withdrawals is made, the actual ownership of the trust funds by the trustee, the “anti-alienation” provisions of ERISA, the wife’s never having had “available cash proceeds” during the trustee-to-trustee transfer of the funds from the husband’s IRA to her own, the broad language protecting IRA rollovers from the reach of creditors in CPLR 5205, the lack of express direction in section 475 of the Judiciary Law to permit a charging lien against retirement funds, and the lack of any provisions relating to a charging lien for attorney’s fees under the Domestic Relations Law mandate that the attorney’s request for a charging lien against the IRA held by the wife in this case be denied.
The request for a charging lien is denied. The matter of the amount of fees that are encompassed in the attorney’s retaining lien is referred to arbitration consistent with the rules of the court. (22 NYCRR 137.0.)

. The attorney’s application is properly before the court. Judiciary Law § 475, which establishes a statutory attorney’s lien, permits enforcement of the lien either by way of motion in the main action or by plenary action. (Miller v Kassatly, 216 AD2d 260 [1st Dept 1995].)

. The coverture fraction is a method of allocating marital shares of retirement assets derived from Majauskas v Majauskas (61 NY2d 481 [1984]; see also Rodriguez v Rodriguez, 70 AD3d 799 [2d Dept 2010]).

. In a contemporaneous application, the husband brought a contempt action against the wife, seeking enforcement of the judgment of divorce. The court held a hearing on that application and has reserved decision awaiting final submissions. It appears that the funds held in the wife’s IRA are the only available resource to pay any claims made by the husband in the contempt proceeding.

. This court grants the attorney a retaining lien, which allows him to keep the client’s file until paid, even though the wife may not need to recover her file from her three-year-old completed divorce. (Ventola v Ventola, 112 AD2d 291, 292 [2d Dept 1985]; Dialcom, LLC v AT & T Corp., 37 Misc 3d 1228[A], 2012 NY Slip Op 52213[U], *11 n 1 [Sup Ct, Kings County 2012].) The attorney’s remedies for retaining and charging liens are not exclusive, but cumulative. (Balestriere PLLC v BanxCorp, 96 AD3d 497 [1st Dept 2012].) It is noteworthy that “[a]n attorney with a [retaining] lien on a file which no one wants is like a garage mechanic with an abandoned junk car in his possession” (Theroux v Theroux, 145 AD2d 625, 627 [2d Dept 1988]).

. The IRC allows penalty-free distributions because of factors apart from age in certain circumstances. (See 26 USC § 72 [t] [2] [A] [ii]-[iv] [permitting penalty-free distributions due to the death of or disability of the IRA-holder, or as substantially equal periodic payments for the life expectancy of the account holder]; [B] [medical expenses], [D]-[F] [health insurance premiums, certain higher education expenses, and first-time home purchase].) These circumstances are confined to specific and narrow uses and none applies here.

. The Supreme Court noted that Congress has made it extremely difficult to make any withdrawals from an IRA prior to the designated age because the 10% penalty applies proportionally to any amounts withdrawn; it “effectively prevents access to the entire balance” in the IRA. (Rousey v Jacoway, 544 US 320, 327 n 1, 328 and n 2.)

. The author of this opinion was a member of the New York State Senate during the debate over the 1994 amendment to CPLR 5205.

. The foregoing exemption is unavailable where: (1) the asset is transferred within 90 days before commencement of the action upon which the judgment is entered; or (2) the transfer is deemed fraudulent under Debtor and Creditor Law article 10. (CPLR 5205 [c] [5].) Neither circumstance is present in this case.

. (See Matter of Thomasson v Latourette, 63 App Div 408, 412 [2d Dept 1901] [citing section 66 of the Code of Civil Procedure and noting the “remedy-given is equitable in character, and we think the equity side of the court has jurisdiction”].) This court notes that the Civil Code section was amended in 1879 to add the same broad language as appears in its contemporary Judiciary Law counterpart. Both expressly apply the lien to any “proceeds thereof in whosoever hands they may come.” (Code Civ Pro § 66, cited in Matter of Pieris, 82 App Div 466 [2d Dept 1903].)

. The Court in Memmo v Perez cited two cases after declining to address whether the IRA was a “new fund,” but neither case mentions IRAs and both cases rest, as does Memmo v Perez, on the impact of a stipulated lien on the attorneys’ rights to recover. (Miller v Kassatly, 216 AD2d 260 [1st Dept 1995]; Resnick v Resnick, 24 AD3d 238, 239 [1st Dept 2005].)

. There is no dispute that the QDRO is a “final order” that fits within the language of section 475 of the Judiciary Law.

. The Fourth Department in Goldstein, Goldman, Kessler & Underberg v 4000 E. Riv. Rd. Assoc. stated,
“By way of illustration ‘proceeds’ are not created by successful litigation which results in: enhancing the value of real estate by securing a zoning change from residential to commercial (Matter of Desmond v Socha, 38 AD2d 22, affd 31 NY2d 687, supra); a declaration that reconnection fees charged to gas users were illegal and uncollectible (Kovarsky v Brooklyn Union Gas Co., 170 Misc 855, affd 261 App Div 822); a declaration that a real property mortgage is invalid, and staying its foreclosure (Matter of Snitow v Jackson, 4 Misc 2d 351 [Eager, J.]). Conversely, ‘proceeds’ from which counsel fees may be secured have been identified from: a refund of contract moneys (Gerzof v Sweeney, 22 NY2d 297); money payments due on a client’s assigned invoices (Todd v Mutual Factors, 3 AD2d 537, affd 4 NY2d 759); the equity of redemption to real property (Robinson v Rogers, 237 NY 467).” (64 AD2d at 488 n 2.)

. The Judiciary Law charging lien has existed, in large measure unchanged, since 1909. It was amended in 2012 to extend the lien to mediation and settlement negotiations. In contrast, ERISA, which established IRAs as a matter of federal law, was enacted in 1974 and the amendments to the CPLR making IRAs exempt from creditor claims date from 1989 and 1994. Chronologically, the recent CPLR amendments involving claims against IRAs could have easily exempted attorney charging liens, but the legislature chose not to.